OHIO FARMERS' INSURANCE COMPANY v. STOWMAN.

[No. 2,013. Filed June 10, 1896. Rehearing denied October 14, 1896.]

INSURANCE.—*Construction of Policy.*—*Payment of Premium.*—A provision in an insurance policy that where a note is given for the premium and the same is not paid within thirty days after it becomes due the policy shall be void until the note is paid, is not applicable where no note is given and the insured is given a reasonable time in which to pay the premium. *p. 208.*

PLEADING.—*Action Against a Foreign Insurance Company.*—*Jurisdiction.*—The question of jurisdiction of the court in an action on a policy of insurance issued by a foreign insurance company, brought in the county in which the company had an agent, other than the county in which the plaintiff and the agent issuing the

policy resided, can only be raised by a special plea alleging such facts as are necessary to raise that issue. *pp. 210, 211.*

PLEADING.—*Action on Insurance Policy.—Complaint.*—In an action on an insurance policy a complaint alleging that the policy was executed and delivered to plaintiff in consideration of a specified amount as a premium, is sufficient without alleging a payment or an agreement to pay anything, as it is immaterial whether the premium was paid in cash or whether a credit was given for the same. *p. 211.*

INSURANCE.—*Failure to Pay Premium at Time Fixed.*—The failure of assured to pay the premium on an insurance policy within a definite and fixed time does not work a forfeiture of the policy in the absence of any stipulation to that effect in the policy. *p. 212.*

From the Marshall Circuit Court. *Affirmed.*

*J. D. McLaren,* for appellant.

*E. C. Martindale* and *S. N. Stevens,* for appellee.

REINHARD, J.—Appellee sued and recovered judgment against appellant in the court below on a fire insurance policy on certain personal property, situated in the city of Hammond, in this State. At the time this policy was written the agent wrote another on a house owned by appellee, in said city of Hammond. The personal property destroyed and covered by the policy in suit was not contained in said house, but in a rented dwelling occupied by her, she having leased her own to others. The policies were written June 18, 1892, but not delivered until August 22, 1892, the agent having held them that long, it is claimed, so as to enable the appellee to procure the money with which to pay the premiums. The policy in suit was for one year, from June 18, 1892, and the property was burned January 18, 1893. The premium on this policy was $9.00, and on the policy covering the house $12.00. At the time of the delivery of the policies, the appellee paid the agent $10.00 on account of the premiums of both policies. Appellant claims and the agent testified that it was agreed that inasmuch as appellee

was unable to carry both policies, that the one, on the personal goods should be canceled at once, and that appellee agreed to send it to the agent's office to be officially canceled, but that she neglected to do so. The remainder of the premium was never paid, but soon after the fire and after said property had been destroyed, the appellee sent the remaining premium due on both policies to the agent, but he would not receive it, having knowledge of the loss.

The appellee's version as to the matter of unpaid premiums of the two policies is that the agent credited her for the part still remaining due after the payment of the $10.00, saying at the time that she might pay it whenever she could, or whenever it was convenient for her to do so.

The appellee testified that at the time she paid the agent the $10.00 she told him she wanted the amount applied on the policy on the house, and that he told her she could keep both of the policies and pay the balance whenever she had the money. The appellant's agent, who took the insurance, testified that the appellee did not pay anything on the policy in suit, but owed the full amount thereon, $9.00. There was no other evidence upon the subject.

It is, therefore, the undisputed evidence that no portion of the premium of the policy in suit had been paid when the policy was delivered, and that $10.00 of the premium was then paid on the two policies, leaving a balance of $11.00 still due, $9.00 of which was payable on the policy in suit. The appellee claims that the agent gave her time to pay this balance as long as she wanted; the agent testifies that no time was given her, but that the policy (on the furniture) was to be canceled. This appears to be the point of dispute between the parties, but it does not seem to us that it is

material whether the appellant or the appellee is right in this contention.

There was no clause in the policy providing for a forfeiture in case the premium remained unpaid for any certain period, or was not paid in cash. The only provision relating to a forfeiture is that where a note is given for the premium and the same is not paid within thirty days after it becomes due, the policy shall be void until the note is paid, etc. As there was no note given in this case, the above provision cannot be made applicable.

We know of no reason for holding that an insurance company may not sell insurance on a credit. If the company, through its agent, accepted the insurance with the agreement that appellee should have a reasonable time in which to pay the remainder of the premium, the policy did not become forfeited by reason of the nonpayment of such premium. The unpaid premium then simply became a debt due from the appellee to the appellant, to be collected like any other debt. There being evidence to sustain appellee's theory of the transaction, we cannot reverse the judgment on account of a failure of proof on the subject of the payment of the premiums.

The appellant argues that this case is governed by the law as declared in *Continental Ins. Co.* v. *Dorman*, 125 Ind. 189. But in that case a note was given for the premium, and the policy expressly provided that in case of failure to pay the note at maturity the policy should be void while the note remained unpaid. It was attempted to show that the note was taken in absolute payment of the premium, and it was held that this was no excuse for failure to pay the note, inasmuch as such an agreement would be in plain contravention of the terms of the written contract and hence void. No such case is here presented.

Ohio Farmers' Insurance Company *v.* Stowman.

The appellant vigorously assails the jury's answers to the interrogatories propounded to them, and it must be confessed, they, or some of them, at least, are singularly repugnant to the positive and uncontradicted evidence. Thus it is found by the jury that the appellee paid the premium, or part thereof, on the policy in suit, when it is practically admitted by her that the payment of $10.00 made by her was on the other policy. More remarkable still is the finding that neither the appellee nor her brother for her offered to pay the balance of the premium still due on the two policies to the appellant's agent at Hammond, Indiana, after the goods had been burned, and that said agent did not refuse to accept the same. On this subject the appellee testified without equivocation that either on the day of the fire or afterwards she sent the money by her brother to appellant's agent, Knotts, to pay the balance due on both the policies, while Knotts stated in his deposition that appellee's brother, after the fire, tendered him either $9.00 or $11.00 on these policies, which he refused to receive. There was no testimony in contradiction of this statement. Hence it is difficult to understand just where the jury obtained the testimony upon which they based their answer that no such tender had been made after the fire.

Again, the jury found that the premium for the policy in suit was paid to the appellant by Knotts on or before his final settlement with said appellant. Of this there is no evidence. The fact that Knotts testified that he owed the company nothing did not warrant the jury in finding that he had paid over to the company the premium due from appellee, in the absence of some testimony to that effect.

We do not think, however, that the determination of this case depends in any degree upon the truth or

falsity of these answers to the interrogatories. If the policy in suit was delivered to the appellee under the agreement that the latter should pay the balance of the premium when it was convenient, or within a reasonable time, it was an agreement which the parties had the power to make, and the policy would not be forfeited in the absence of a clause to that effect in the contract. Hence it would be wholly immaterial whether the appellant received the premium or not, or whether any tender of the balance was made after the fire, or before, for that matter. The answers to the interrogatories are therefore not inconsistent with the general verdict.

We have examined the evidence concerning the question of proof of loss, and our conclusion is that if no such proof was made it was waived by the appellant in denying liability upon other grounds.

There was no error in giving instruction one, two and three, requested by appellee.

We find no reversible error in the overruling of the motion for a new trial.

Error is predicated upon the overruling of the appellant's demurrer to the complaint. The grounds of objection are (1) that the court has not jurisdiction of the person of the defendant, or of the subject-matter of the action, and (2) that the complaint does not state facts sufficient to constitute a cause of action.

It is alleged in the complaint that the appellant was a foreign corporation, doing business in this State in 1892. The policy filed with the complaint shows that the property insured and burned was situated in the city of Hammond, State of Indiana, and it appears from the pleading under consideration that the agent who issued the policy, as well as the insured, resided in said city. From these facts it is contended by appellant's counsel that the action is local and can only

be brought in the county in which the city of Hammond is located, and not in the county of Marshall, where this action was commenced.

Section 4915, Burns' R. S. 1894 (3765, R. S. 1881), prescribes the terms upon which foreign insurance companies may transact business in this State. It is argued that the compliance with this section of the statute, which must be presumed, fixes the legal residence of such company in the county in which this particular agency is located, and that suits must be brought against the company, if at all, in such county.

Section 313, Burns' R. S. 1894, authorizes the bringing of any action against a corporation in any county in which it has an office for the transaction of business. *Evansville, etc., R. R. Co.* v. *Spellbring,* 1 Ind. App. 167. It is averred in the complaint that there was at the time of the bringing of this action a duly authorized and acting agent in Marshall county, where the action was instituted.

By section 4916, R. S. 1894, process may be served upon the agent of any foreign insurance company in any county in the State where consent has been entered of record. But conceding without deciding that under the circumstances of the present case the action must be instituted in the county in which the insurance was contracted for and the loss occurred, if at the time of the suit there be an agent in such county, we do not think it appears anywhere that there was such agency in said county at the time of the commencement of this action. If the appellant desired to present the question of jurisdiction it should have filed its proper plea averring such facts as are necessary to raise that issue.

It is further insisted that the complaint is insufficient because it fails to aver that the appellee paid, or agreed to pay anything for the policy. The complaint

does aver, however, that the policy was executed and delivered to the appellee in consideration of the sum of $9.00 as a premium. It is immaterial, as we have already shown, whether the premium was paid in cash or whether a credit was given for the same. There is no stipulation in the policy that the contract shall be void upon failure to pay the premium in cash or to give a note for the same. Besides, there is an averment that all the conditions in said contract have been fulfilled by the appellee.

The demurrer to the complaint was correctly overruled.

The overruling of the appellant's demurrer to the second paragraph of appellee's reply is assigned as error.

Each of the paragraphs to which the reply was addressed avers that the delivery of the policy and the extension given thereon was without consideration. The reply demurred to sets forth the facts relied upon in full and alleges that a certain amount of money was paid upon the two policies mentioned, and time was given for the balance. It also avers that more than enough was paid in money to cover the premium on the policy in suit. This reply is not a departure from the complaint. The court did not err in overruling the demurrer to the pleading under the circumstances.

We find no reversible error.

The judgment is, therefore, affirmed.

### On Petition for Rehearing.

REINHARD, J.—Appellant's counsel insists in his brief on petition for rehearing that "the court erred in holding, as it did in effect, that the promise of the appellee to pay the required premium for the policy

within a definite period of time and that her failing to pay within that time, and before the loss occurred, were not a complete bar to her recovery, as the appellant infers from the language of the court, that there was no express clause in the policy that it should be forfeited for such nonpayment." "Such a rule," appellant's counsel say, "antagonizes every sense of justice and common honesty, as well as the general rules of law."

Assuming for the present that there was a promise on the part of the appellee to pay the premium within a definite and fixed time, it by no means follows that the non-payment of the premium within such time works a forfeiture, in the absence of any stipulation to that effect in the policy.

"If, however, the policy contains no such proviso [a proviso of forfeiture for non-payment of premium], though the charter and by-laws require the payment of annual premiums, the non-payment of annual premium when due does not work a forfeiture. Such a policy insures for the number of years stipulated absolutely, leaving the annual payment of the premium to be enforced, not as a condition, but as a part of the consideration agreed to be paid." 2 May, Insurance, section 343.

It is a most familiar principle of the law of insurance that forfeitures are not favored, and even where it is attempted to insert a forfeiture clause, unless the language is clear and the failure to comply with the condition equally so, the courts will not declare a forfeiture and they will never construe a forfeiture by mere intendment. *Bowlus* v. *Phenix Ins. Co.* 133 Ind. 106, 20 L. R. A. 400; *Home Ins. Co.* v. *Marple*, 1 Ind. App. 411; *Farmers' Mutual, etc., Ass'n* v. *Koontz*, 4 Ind. App. 538. Such provisions will always be strictly construed so as to avert a forfeiture. *Continental Ins. Co.*

v. *Vanlue*, 126 Ind. 410; *Sweetser* v. *Odd Fellows, etc., Ass'n*, 117 Ind. 97; *Phenix Ins. Ass'n* v. *Lorenz*, 7 Ind. App. 266.

The appellant not only asks us to reverse the rule as to strict construction, but to read into the policy a proviso of forfeiture for the non-payment of the premium when no such condition is contained therein. This we cannot do. We are powerless to make a new contract for the parties in an insurance case, as much as in any other kind of a contract. If the company desired such a clause or provision in the policy, it was easy enough to place it there in express terms. Having failed to do so we cannot undertake to insert it by arbitrary construction.

It is all well enough to speak about the "injustice" of a decision which allows a party to collect a loss without paying the premium. But we are not concerned with abstract notions of justice and right. The law deems it just and right to hold the parties to their contracts. They can easily protect themselves by inserting such stipulations as they may regard as necessary, and if they fail in this they have no one to censure for it but themselves.

Counsel for appellant says there was no consideration for the policy. We have yet to learn that a promise to pay a certain and definite amount of premium is not a sufficient consideration for the risk involved in a policy of fire insurance. The illustration of counsel is not an apt one. He says: "Suppose A. gives B. his non-negotiable note for $100.00 payable 90 days after date for a horse to be delivered to A. in ten days after the execution of the note: B. fails to deliver the horse and never does deliver him until the note matures, and then he offers to deliver the horse, but A. declines to accept him, and B. sues upon the note, and A. pleads want and failure of considera-

tion, setting out the facts fully. Now there is no express stipulation in the note that it shall be forfeited or non-collectible if the horse is not delivered within the ten days, but would not A.'s defense, if sustained by competent evidence, bar B.'s recovery upon the note?"

The all-sufficient answer to the question of the learned counsel is that we have here no such case as he supposes. If B. had sold to A. a horse on a credit of thirty days, delivering the horse to make the sale complete, and (whether A. had given a note for the horse or not) failed to pay the debt when due, then we would have just such a case as the appellant insists is made by the evidence in the case at bar. The appellant, by its agent, sold and delivered to the appellee an insurance policy and the appellee promised (according to appellant's version of the facts) to pay the premium in thirty days, but failed to do so. Now what is the appellant's remedy? Certainly there is no forfeiture of the policy any more than there would be a forfeiture of A.'s right to retain the title to the horse. In both instances the party to whom the money is owing must look to the debtor for payment as in the case of any other ordinary debt. He can sue the debtor whenever the debt matures and recover judgment against him.

In the case at bar, if the appellant's version of the facts is correct, the policy was in force the moment the agent delivered it to the appellee. Had the property been burned the next day or the next hour, without the fault of the appellee, the appellant would have been liable. The promise to pay the premium, expressed or implied, renders the contract operative. Now if the failure to pay in thirty days or at any time makes the contract void, it must be by reason of some clear and unequivocal provision to that effect in the

contract itself. There is no such provision in the contract under consideration.

Appellant's counsel says there is no substantial disagreement in the testimony of Knotts, the appellant's agent, and that of the appellee "that the policy in suit was delivered to appellee upon her express promise to pay the premium upon her return from Argos, and she says she did not pay it." Counsel also insists that the question of whether or not the policy in suit was canceled at the time of the payment of the $10.00 "was not the main and controlling point in the case." If this be true, then the defense of no consideration or failure of consideration cannot stand for a moment. If there was a delivery of the policy in suit, and no cancellation of the same, as appellant's counsel now seems to concede, and as the appellee certainly testified, then the promise to pay within thirty days, if, there was such a promise, or the implied promise to pay within a reasonable time, if there was no express promise to pay within a definite time, was a legal and sufficient consideration for the undertaking of the appellant to insure the appellee's property against loss by fire. Had there been a cancellation of the policy, or an agreement to cancel, then the obligation of the appellant to carry the insurance would have ceased with the liability of the appellee to pay the appellant for the premium. The liability of the appellee continued until there was an actual payment by her of the premium, but the failure to pay the latter did not operate to forfeit the policy, in the absence of an express condition in that instrument, that the policy could be collected only in case the premium had been paid; hence, if the learned counsel is correct in saying that this court "mistakes the evidence of the agent Knotts" when it says that he testified that no time was given her, his defense has a more feeble

foundation to stand upon than we had supposed; for if time was actually given the appellee in which the premium was to be paid, it strengthens the claim that the insurance was sold on a credit and that no agreement was made by which the policy in suit was to be canceled because the appellee was unable or unwilling to pay the premium thereon.

We still think, however, after a careful review of the evidence, that the construction placed upon it in our former opinion is the correct one. When we stated that Knotts, the agent, testified that no time was given the appellee in which to pay the premium on the policy in suit, but that the same was to be canceled, we had reference, of course to what took place at the time of the payment of the $10.00 and concerning the balance due for premiums. If Knotts did not intend to convey the impression that there was no agreement to give the appellee time to pay the balance of the premium on the policy covering the furniture, there could be no point in the claim that said policy was to be canceled, for to admit that the contract remained in force on this policy after the payment of the $10.00, is a concession of the appellee's entire contention. Knotts testified that the $10.00 was on the premium of the policy on the house, and not of the policy in suit, which latter policy was by the agreement of the appellee then and there made of no effect and was to be surrendered and canceled. If that was true there could certainly have been no agreement to extend the time for the payment of this balance for thirty days or any other period. Knotts fortifies his claim that this policy was to be canceled by the further statement that he went to the appellee's house two or three times to take up the policy, but did not find her at home. The appellee, on the other hand, testified that while it was her intention at first to take

only one of the policies, Knotts told her, "no, if you want to take the two policies take them and keep them until I come back," and that she replied, "all right, I will take them and hand you the money when I come back." She says she went to Argos to see her mother who was sick and then paid him the $10.00, after she had been to Argos, and took a receipt for it; and that she took the policies on the second day of August and came back from Argos and paid him the money when the receipt was given. The receipt bears date "Hammond, Ind., 8, 22, '92." She says that after that she did not see Knotts any more until after the fire. It is true that in another part of her examination she also stated that this receipt was given when the policies were delivered, but this statement she afterward corrected by saying that she paid the money after she returned from Argos, and it was for the jury to decide which of her statements was the true one. As to the balance of the premiums she stated that "there was no agreement about it, he said I could pay it at some other time," that nothing was said as to where or when the balance was to be paid, and that there was no agreement that the policy was to be canceled. She also said that she went to Argos twice and that when she came back from Argos (whether the first or second time she failed to state) she had plenty of money to pay the premiums, and sent Knotts word to that effect in November, but did not know whether he received the information or not. She admitted that she told Knotts, when she paid him the $10.00, that she wanted that applied on the policy on the house, but that he told her she could keep both policies, and in answer to the question of appellant's counsel whether she paid the $2.00 on the other policy, she said, "No, sir, I owe the $2.00 yet, I owe $11.00 on the two policies."

It must be admitted, we think, that her testimony is somewhat vague and indefinite, but it is our duty to construe it most favorably to the appellee, as the jury had the right to construe it.

And so we think we are amply justified in saying, as we did in our former opinion, that as to the extension of time for the unpaid balance of the premiums of the two policies, the appellee testified that the agent credited her for the part remaining unpaid upon both policies, saying that she might pay it when it was convenient, while the agent testified that there was no such agreement for the extension of time as to the balance due on the policy in suit, but that it was agreed that it should be canceled. We cannot agree with counsel that appellee admitted that she paid the $10.00 on the other policy. On the contrary, she stated that while that was her desire at first, Knotts told her to keep both policies and that she paid the $10.00 on both.

As we said in the former opinion, it is immaterial to the correct determination of this case whether the appellee's version or that of Knotts was absolutely correct. The jury had the undoubted right to believe the appellee's statement that she paid the $10.00 on both policies and owed a balance on both, and that, as to such balance, Knotts gave her further time for payment, and that the policy in suit was not to be canceled but remained in force. If this statement be true, then, in the absence of a forfeiture clause in the policy, the appellant is liable to her for the insurance.

Even if the appellant's counsel is correct in his contention that the undisputed evidence shows that when Knotts delivered the policy in suit to the appellee she agreed to pay the premium on it when she returned from the visit to her mother, it will not help this case. The moment the policy was delivered to the

appellee, upon such a promise by her, the contract of insurance was in force, and it remained so during the entire period covered by the policy, unless there was in the contract a provision of forfeiture for nonpayment of the premium.   If this doctrine is an unjust and dangerous one, as counsel insists it is, the injustice and injurious consequences must be laid at the door of other courts than this, for as we have shown by the authorities cited, we are only following a rule that has long been established.

The case cited by counsel in support of the proposition that it was not incumbent on the agent in order to render the policy effectual to urge the payment of the premium, is not an authority in his favor.   *Union Central Life Ins. Co.* v. *Pauly*, 8 Ind. App. 85.   In that case there had been no delivery of the policy as in the case at bar.   Here the delivery of the policy did render it effectual, and the arrangement between the agent and the insured as to the payment of the premium in future simply created an indebtedness to the company on the part of the appellee.   There was in the present case no agreement that the policy should not become operative until the premium was paid.

Counsel for appellant again argues the question of jurisdiction, but we think we covered the ground on that point sufficiently in what we said in the original opinion.   We have not been able to come to any different conclusion upon that question than the one at which we arrived upon the former consideration of the case.

Petition overruled.