## Northwestern Life Assurance Co. v. Emma Schulz.

1. LIFE INSURANCE—*Construction of the Contract—Indorsements—Forfeitures.*—Where a policy of life insurance calls for the payment of the annual premium in advance, and its indorsements permits the insured at his option to pay either annually, semi-annually, or quarterly, at the rates prescribed for each, it would seem that, construing the policy and indorsements together, before the company could declare a forfeiture for a failure to pay the quarterly rate at the quarterly period, it must show that the insured had made his election and agreed to pay quarterly at quarterly rates, or at least it should not be permitted to forfeit the policy without first having made a demand upon the insured for the payment of the claimed premium.

2. SAME—*Contracts of Insurance to be Construed in Favor of the Insured.*—Contracts of insurance are to be construed in favor of the insured, and where there is doubt or uncertainty in their terms, and when they are susceptible of two interpretations, that which will, without doing violence to other parts of the policy, sustain the claim of the insured, or those claiming privity with him, must, in preference, be adopted.

3. SAME—*When the Question is One of Forfeiture.*—Where the question at issue in a suit upon a policy of life insurance is one of forfeiture, no liberal construction or intendment will be indulged in favor of such forfeiture.

4. SAME—*When the Provisions of the Policy Should be Read in*

Northwestern Life Assurance Co. v. Schulz.

*Connection with the Indorsements.*—The provisions of a policy of life insurance, that in case of death of the insured the unpaid part of the balance of the then current year's premium should be deducted from the amount of the insurance money to be paid, should not be read as referring to the indorsements upon such policy, but as referring to a case where the insured had not, for some reason, paid all the annual premium.

5. Same—*Where a Credit will be Presumed.*—Where a policy of life insurance is delivered upon payment of less than the annual premium, the giving of credit for the balance will be presumed.

6. Same—*Construction of a Particular Policy.*—Under the facts in this case, the court construes the policy in suit as one insuring the deceased from year to year, with the right, as to the first year at least, to pay in installments, less than the whole annual premium.

Assumpsit, on a policy of life insurance. Appeal from the Circuit Court of Cook County; the Hon. Samuel C. Stough, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. · Opinion filed March 12, 1901.

E. L. Barber, attorney for appellant; Walker & Payne, of counsel.

Jerome Probst, attorney for appellee.

Mr. Presiding Justice Shepard delivered the opinion of the court.

Some time in 1885, the appellant company issued to one Mathias Schulz an assessment benefit certificate, payable at his death, which, in 1898, it desired to take up and retire, and to issue to Schulz in place thereof, a new ordinary life plan policy, on which regular stipulated premiums should be paid instead of the former assessments. Accordingly, acting through its authorized agents, it solicited Schulz to that end. The result of the interviews between appellant's agents and Schulz, in the matter, was that Schulz made an application and delivered it to the agents, as follows:

" To the Northwestern Life Assurance Company, Chicago, Illinois :

Please cancel my certificate No. 12569, to be surrendered on delivery of new policy, and issue to me in lieu thereof a policy on the new ordinary life plan of said company for the same amount, with the benefits payable as follows: Emma Schulz (wife).

I agree that the premiums to be paid by me shall be adjusted in accordance with my present age (nearest birthday) as shown by the company's table of rates for the policy hereby applied for, and shall be payable annually.

Herewith find inclosed the sum of $250.35, the amount required by the company for such purpose.

I hereby agree and warrant that the statements and answers made in my original application and in any application made by me for reinstatement are material and true, and that said application, together with my agreement thereunder and this warranty, are hereby made a part of any policy that may be issued pursuant hereto.

Dated at Chicago, State of Illinois, this 22nd day of April, 1898.

Mathias Schulz.

Chauncey B. Bradley, agent."

In due course, after the application was made and delivered, the policy of insurance sued on was issued by the appellant, dated April 26, 1898. The main contractual clause of the policy was as follows:

"Number 118,096.                              Amount $5,000.
    Age 57                    Annual Premium, $250 35-100.
        NORTHWESTERN LIFE ASSURANCE COMPANY,
                    CHICAGO, ILL.

In consideration of the application for membership in this company, which is made a part of this contract, and of the advance payment of two hundred and fifty and 35-100 dollars on the delivery hereof, and like advance payments to be made on or before twelve (12) o'clock noon of the twenty-sixth day of April, in every year during the continuance of this contract, the Northwestern Life Assurance Company does hereby receive Mathias Schulz of Chicago, State of Illinois, herein called the insured, as a member of said company, and does promise and agree to pay to his wife, Emma Schulz, if living, otherwise to the executors, administrators or assigns of the insured, the sum of $5,000, at the office of said company, in Chicago, Illinois, within ninety (90) days after receipt of satisfactory proofs of the death of said insured, deducting therefrom the unpaid balance of the then current policy year's premiums (if any) and any other indebtedness hereunder."

Then follow thirteen printed rules or limitations concerning the construction to be given to the contract, of which

we observe only three that are particularly applicable to the question before us.    They are as follows:

"3.    Any moneys required to be paid under this policy must be actually paid when due, at the office of the company in Chicago, Illinois, or to a duly authorized collecting agent, furnished with a receipt signed by the secretary. The failure to pay any of the premiums, or the failure to pay any notes or interest upon notes given to the company for any premium, on or before the days upon which they become due, shall render this policy *ipso facto* null and void, and all money paid thereon shall be the property of the company except as otherwise hereinafter provided."

"8.    In the event of lapse, surrender or forfeiture of this policy, all personal liability of the insured hereunder shall cease and determine."

"11.    This policy will be reinstated on the written application therefor within six months after the non-payment of any premium, subject to evidence of good health satisfactory to the company, and payment of all unpaid premiums with interest at the rate of six per cent per annum."

Upon the back of the policy there were also certain indorsements, not referred to by anything in the policy itself, of which the following are copies:

"No agent of the company has any power or authority to make, alter or discharge contracts, waive forfeiture or grant credit; and no alteration of the terms of this contract shall be valid and no forfeiture hereunder shall be waived unless such alteration or waiver be in writing and signed by the executive committee of the company."

"PREMIUMS

on this policy may be paid annually, semi-annually or quarterly, at the option of the insured, as follows:

| ANNUAL RATE. | SEMI-ANNUAL RATE. | QUARTERLY RATE. |
|---|---|---|
| $250 35-100 | $130 20-100 | $66 35-100." |

Mathias Schulz, the insured, died January 2, 1899, less than eight and one-half months after the policy was issued. Emma Schulz, his widow, named as beneficiary in the policy, was plaintiff in the suit below and is appellee here.    She recovered judgment for the full amount of the policy, and the company has appealed to this court.

The defense rests, principally, upon the contention that

the insured forfeited the policy, by neglecting to pay a quarterly installment of premium which fell due, as is claimed, on October 26, 1898. He sent a bank check by mail for the amount of such quarterly installment, on October 29, 1898, but it was not received by the company until October 30, 1898, and was then returned, because, as claimed, the payment was made too late.

It will be observed that the application, signed and delivered by Schulz, stated his agreement to pay the premium annually, and that he inclosed with the application the amount of such premium, for one year.

One of the company's agents who had solicited Schulz to make the application, testified that, in all his conversations previous to the time of signing and delivering the application, Schulz spoke as though he would pay the premium annually, and that just as he, the agent, was leaving, after Schulz had signed the application, he inquired what the quarterly rate would be, and was told both the annual and quarterly rates; and that Schulz then said he would not be at home when the policy would be ready to be delivered, but would leave the old certificate, and his " check for whatever sum I shall (he should) elect to pay," at his office, with his bookkeeper.

A few days afterward, the same agent took the policy to Schulz' office and exchanged it with the bookkeeper for the old certificate and a check for $66.35. He never saw Schulz after the application was made and delivered, and it does not appear what was said by the bookkeeper, or himself, at the time the exchange of papers was made. So far as is shown, Schulz never afterward spoke with anybody connected with appellant, until he went to protest against the refusal by appellant to accept his check for a like amount that was subsequently, in October, 1898, returned to him by the company. Schulz' check, for another like amount, that was sent to the appellant in July, 1898, was accepted by the appellant.

It appears that Schulz did not personally attend to his insurance affairs, but that they had always been in the charge

of his bookkeeper, and it was he who drew up the checks referred to. It should be noted that the language of Schulz to the agent when the application was delivered, was that he would leave his check for the sum he elected to pay. Construed most favorably for himself, this meant the amount he would pay at the delivery of the policy, and not necessarily at all times thereafter. Except as to the giving of those three checks, and such inferences as are derivable from such acts, we do not find any conduct or word by Schulz subsequent to the delivery by him of the application for the policy, from which to determine what his intention was, or what election he made, concerning whether he did, or not, wish to change from the annual payment of premium plan, expressed in the application and the policy itself, to a quarterly premium plan.

It is to be observed that the indorsement on the back of the policy, whether it be considered as a part of the policy or not, gave the option to the insured to pay the premiums annually, semi-annually or quarterly.

Now, the policy itself calling for the payment of the annual premium to be made in advance, and its indorsement permitting the insured, at his option, to pay either annually, semi-annually or quarterly, at the rates prescribed for each, it would seem that, construing the two together, before the company could forfeit the policy for failure by the insured to pay the quarterly rate at a quarterly period, the company must be prepared to show plainly that the insured had made his election and agreed to pay in that way, and at those rates, or at least, should not be permitted to forfeit the policy without first having made a demand upon the insured for payment of the claimed premium. It does not appear to be provided either by the policy or by any of its indorsements, that if payments of the premium, other than the annual premium, are made at either of the periods permitted within the year, they must be paid in advance.

This class of contracts are, by all the authorities, to be construed in favor of the insured, where there is doubt or uncertainty in their terms. When susceptible of two inter-

pretations, that which will, without doing violence to the other parts of the policy, sustain the claim of the insured, or those in privity with him, must in preference be adopted. Healey v. Mutual Accident Association, 133 Ill. 556; Globe Accident Ins. Co. v. Gerisch, 163 Ill. 625.

"The question here is one of forfeiture, and no liberal construction or intendment will be indulged in favor thereof." Grand Lodge, etc., v. Bagley, 164 Ill. 343.

It is probable that the indorsement on the back of the policy, relating to the option by the insured to pay in either annual, semi-annual or quarterly installments was not a part of the contract, and was not binding upon the insured, there being no reference made to it in the body of the policy. The indorsement must be referred to in the policy, as constituting a part of it, to entitle it to be considered as a part of the policy. (St. Clair County Benefit Society v. Fietsam, 97 Ill. 474; Planters' Mutual Ins. Co. v. Rowland, 66 Md. 236; Mullaney v. National Ins. Co., 118 Mass. 393.) But even though it be a part of the policy, to be read in connection therewith, we think it should be construed, as we have indicated, in favor of the insured, unless the parol proof made it clear that the insured made his election and adopted the quarterly method and rates, as a part of the terms upon which he accepted the policy. This we do not think was done. In the absence of proof of some other method being agreed upon, the method of annual payment provided for by the policy itself must stand.

The provision in the policy that in case of death of the insured the unpaid part of the balance of the then current year's premium should be deducted from the amount of the insurance money to be paid, can not, we think, be read as referring to the indorsement, but should be read as referring to a case where the insured had not, for some reason, paid all the current annual premium. The policy, as well as the application, seems to require the advance payment of the annual premium, except for such part as credit may be given (see provision about notes given for any premium), and it is not to be doubted that a credit could be given for a portion of such premium without invalidating the policy.

Gosch v. State Mutual Fire Ins. Assn., 44 Ill. App. 263; Hancock Life Ins. Co. v. Schlink, 175 Ill. 284; 1 Joyce on Ins., Sec. 79; Chicago Life Ins. Co. v. Warner, 80 Ill. 410.

The policy having been delivered upon payment of less than the annual premium, the giving of credit for the balance will be presumed, in the absence of clear proof of the company that such was not intended. (Miller v. Life Ins. Co., 12 Wall. 285.) The only way such presumption has been attempted to be overcome, in this case, is by showing the facts already referred to, and we do not think they were sufficient for that purpose.

The English cases cited by appellant do not, in our opinion, apply to this case, for the principal reason that we hold there was not any binding election and agreement made by appellant to take the policy and pay quarterly premiums therefor.

Under the facts shown we can not come to the conclusion the policy was one insuring Schulz from one quarter year to another. It was rather one from year to year, with the right to Schulz, as to the first year, at least, to pay in installments less than the whole annual premium. If there should be inferred from what was done by Shulz, that such installments were to be paid quarterly, then, there being no agreement that they should be paid in advance, the right of appellant to declare a forfeiture for the non-payment of one of them in advance, did not exist, especially without a previous demand.

To comment upon other matters argued would be scarcely more than a repetition of what we have already said, and is unnecessary.

Twenty-five propositions of law to be held by the court were submitted by counsel for the appellant, of which twenty were held and five refused. Aside from the strong presumption that all the law involved in this case was sufficiently expressed in the twenty propositions that were held, we do not see that in the five that were refused, any error was committed. What we have hereinbefore said, covers most of them.

The judgment was correct, and will be affirmed.