## William O. Bailey, Appellee, v. Fraternal Reserve Life Association, Appellant.

1. INSURANCE, § 744*—*when certificate of membership makes application a part of contract of insurance.* In an action on a policy of life insurance issued by a fraternal benefit association, *held* that the language used in the certificate of membership made the application a part of the contract of insurance.

2. INSURANCE, § 120*—*how contract is construed.* An insurance contract has but one object, indemnity, and all conditions and provisions therein which have for their sole aim the purpose of defeating the object of the contract are strictly construed against the insurer.

3. INSURANCE, § 231*—*how answers in application are construed in regard to declaring forfeiture.* The rule that forfeitures of insurance contracts are not favored in law and will never be declared if, by any reasonable construction, such result can be avoided, applies especially in determining whether answers to questions in applications for insurance are warranties, where such questions are of such character that it is beyond human probability that they can be answered with literal and absolute truth.

4. INSURANCE, § 752*—*when answers in application are construed as representations.* In an action on a policy of insurance

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

issued by a mutual benefit association, *held* that a reasonable construction of the contract showed that answers to questions in the application were representations and not warranties.

5. INSURANCE, § 868*—*when pleas averring that answers in application were untrue are insufficient.* In an action on a policy of life insurance, pleas averring that answers to questions made in the application were untrue, without averring that the applicant knew at the time they were untrue, *held* bad on demurrer as such answers were representations and not warranties.

Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the April term, 1916. Affirmed. Opinion filed October 13, 1916. Rehearing denied December 2, 1916. *Certiorari* denied by Supreme Court (making opinion final).

ROBERT H. LOVETT, for appellant.

WATKINS & GOLDEN, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

On the 11th day of January, 1912, appellant issued to Thomas Jefferson Bailey a policy of life insurance, called a certificate of membership, for the sum of $2,000, payable to appellee, a brother of the insured. The certificate recites that the insured, a member of Tallula Lodge No. 37 of said association located at Tallula, Illinois, is, while in good standing, entitled to all the rights and privileges of membership in the association, and entitled to participate in the benefit fund of said association, in the manner and upon the conditions printed therein and on the back thereof, "subject to the Constitution, By-laws, Rules and Regulations of said Association and limited by the *representations* and warranties in the application for membership." The certificate further provides that it is issued and accepted subject to certain limitations and conditions, among which is the following: "(E) This Certificate and said member's written acceptance

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number,

thereof, the application for membership, the Medical Examiner's report thereon (which said application and report are warranted by said member to be literally true in each and every part) and the Laws of the Fraternal Reserve Life Association shall, taken together, constitute the Contract between said member and the association." In the fore part of the application signed by insured is the following declaration: "I hereby declare, warrant, and agree, that the statements hereinafter recorded and each and every one of them are true; that no facts *known to me* affecting my life or disability risk are withheld, distorted, or misstated; * * * I hereby consent and agree that any false statement, misstatement or suppression of facts herein shall deprive myself and my beneficiaries of all rights and benefits in said association; anything to the contrary in the Benefit Certificate hereafter to be issued to me notwithstanding."

In the body of the application appeared twenty-five questions with answers thereto: At the end of the application is the following statement:

"I hereby certify that the above answers and statements are true, and I adopt and accept as my own the statements of the medical examiner on the reverse side of this sheet, and I consent that he acts therein as my agent and not as the agent of the Fraternal Reserve Life Association.        *        *        *        *        *        *

"I have verified each of the foregoing answers and statements from 1 to 25 both inclusive, adopt them as my own, whether written by me or not, and declare, and warrant that they are full, complete and literally true, and I agree that the exact literal truth of each shall be a condition precedent to any binding contract issued upon the faith of the foregoing answers. I further agree that the foregoing answers and statements, together with the preceding declaration, shall form the basis of the contract between me and the Fraternal Reserve Life Association, and are offered by me as a consideration for the contract applied

for, and are hereby made a part of any Benefit Certificate that may be issued on this application, and shall be deemed and taken as a part of such certificate; that this application may be referred to in said benefit certificate as the basis thereof, and that they shall be construed together; and I further agree that if any answer or statement in this application is not literally true, or if I shall fail to comply with and conform to any and all of the laws of the said Fraternal Reserve Life Association, whether now in force or hereafter enacted, amended or adopted, that my benefit certificate shall be void."

The insured died October 31, 1914, and appellee sued appellant in assumpsit to recover the amount named in the policy. Appellant in the court below filed seventeen amended and additional pleas to which a demurrer was sustained, and elected to abide by its pleas, whereupon judgment was rendered in favor of the plaintiff, from which judgment this appeal is prosecuted. The only error assigned and before us for consideration is whether the court erred in sustaining the demurrer to pleas numbered 9 to 17 inclusive. Pleas number 9 to 14 inclusive are based upon the alleged false answer "No" to the following question: "Have any of your grandparents, uncles, aunts, brothers or sisters had rheumatism, insanity, consumption or cancer?"

Plea 15 avers that in said application the insured stated that his mother was dead and is based upon the alleged false answer "No" to the question, "Was tuberculosis or cancer a factor in her death?"

Plea 16 is based upon the alleged false answer "No" to the question, "Have any of your grandparents, uncles, aunts, brothers or sisters had any hereditary disease?"

Plea 17 is based also on the alleged false answer "No" to the question, "Have you ever lived in the family with or nursed any person afflicted with consumption?"

Pleas 9 to 14 aver, respectively, that the insured's sister, aunt, aunt, grandmother, uncle and aunt had been afflicted with consumption. Plea 15 avers that insured's mother died with tuberculosis. Plea 16 avers that insured's grandmother, uncle, three aunts and sister had each had an hereditary disease, to wit, consumption. Plea 17 avers that the insured's mother was afflicted with consumption and that the insured had lived with her and her family while she was so afflicted.

The special causes of demurrer are (1) that the pleas do not aver that the insured knew that his answers were untrue; (2) or that he made them so recklessly that wilful falsehood should be imputed to him; (3) or that the falsehood was material to the risk; (4) or that appellant relied upon the false statements.

It is contended by appellant that none of the objections mentioned in the special demurrer can be sustained to the pleas, for the reason that the application and the certificate together with the by-laws, rules and regulations constitute the contract; that under the terms of the application and the certificate the insured warranted all his answers to be the exact literal truth, and as that made the answers warranties and not representations, it was not necessary that they should contain the averments mentioned in the special demurrer.

It is contended on behalf of appellee, (1) that the certificate does not make the application a part of the contract and therefore the answers to the questions therein are but representations and not warranties; and (2) that even if the application be construed to be a part of the contract, yet a construction of the whole contract shows that the answers to the questions mentioned are but representations and not warranties.

We have no doubt but that from a reasonable construction of the language in the certificate the ap-

plication is made a part thereof, and it remains to be determined whether the answers are warranties or representations.   Conditions in a policy of insurance are made by the insurer and the insured has no voice as to what they should be.   They are invariably very numerous and often deal in terms not commonly known or appreciated by laymen.   An insurance contract has but one object, indemnity, and all conditions and provisions therein which have for their sole aim the purpose of defeating the object of the contract are strictly construed against the insurer.   Forfeitures of such contracts are not favored in law, and will never be declared if by any reasonable construction such result can be avoided.   Especially is this true in determining whether answers to questions are warranties, where such questions are of such character that it is beyond human probability that they can be answered with literal and absolute truth.   Section 174, May on Insurance, vol. 1.   In such a classification must come the questions involved in this suit.   For instance, could any layman with literal truth answer ''Yes'' or ''No'' to the following question: ''Have any of your grandparents, uncles, aunts, brothers or sisters had rheumatism, insanity, consumption or cancer?''   It is a matter of common knowledge that rheumatism is a generic term that is applied to almost every ache or pain not otherwise accounted for.   The dividing line between sanity and insanity has never yet been defined except in a most general way, and in nearly every case where that question is an issue, alienists, experts and laymen have contrary opinions.   Consumption is not confined to tuberculosis of the lungs and, together with cancer, may attack almost any part of the body, internal or external.   It is also a matter of common knowledge that a person may be afflicted with one or more of these diseases and not know it himself, and in many cases they cannot be revealed without a post-mortem examination.   These

same remarks have a general application also to the question, "Have any of your grandparents, uncles, aunts, brothers or sisters had any hereditary disease?" What diseases are hereditary in their character is not within the common knowledge of laymen. In fact, professional opinion differs widely as to whether or not certain diseases popularly supposed to be hereditary are in fact so. The plea alleges that the answer to this question was false because certain relatives of the insured had had consumption. The weight of modern authority is that consumption as a disease is not hereditary. What has been said applies with equal force to the other questions mentioned. Which is the more reasonable construction to be placed upon answers to such questions, that applicant answered the same to the best of his knowledge and belief or that he warranted the literal truth thereof? In an analogous case, *Atkinson v. National Council of K. & L. of S.*, 193 Ill. App. 215, the court said: "To assume that insurance companies soliciting insurance expect answers to such questions to be accurate, and that any mistake or misstatement, whether knowingly made or not, material to the risk or not, should furnish an absolute defense to a suit on the contract, leads to manifest absurdities and a violation of the rules of common sense and common honesty that are presumed to govern mankind in their dealings with each other. Courts have seldom permitted an extreme application of that doctrine."

In the case of *Globe Mut. Life Ins. Ass'n v. Wagner*, 188 Ill. 133, it was held: "In the absence of explicit, unequivocal stipulations requiring such an interpretation, it should not be inferred that the insured or the appellee took a life policy with the distinct understanding that it should be void if any statements made in the medical examination should be false, whether the insured was conscious of the falsity thereof or not. (*Moulor v. American Life Ins. Co.,*

111 U. S. 335.)    Whether or not the ·deceased knew
of the death of his brother at the time of the applica-
tion for insurance was·a question for the jury, and
no evidence of such knowledge appears in the record.
To hold that, as a precedent to any binding contract,
he should guarantee absolutely that none of his broth-
ers were dead would be unreasonable, in the absence
of a ·more explicit stipulation than here appears.    It
not infrequently happens that a man loses trace of
all or a part of his relations, and to hold him to ab-
solutely guarantee that they were living, in order that
he might obtain insurance, would sometimes be to
require an impossibility, and would be almost absurd.
*   *   *   What was meant by 'true' and 'untrue' an-
swers?   In one sense, that only is true which is con-
formable ·to the actual state of things.   In that sense
a statement is untrue which does not express things
exactly as they are, but in another and broader sense,
the word 'true' is often used as a synonym of honest,
sincere; not fraudulent.''   In the case of *Minnesota
Mut. Life Ins. Co. v. Link,* 230 Ill. 273, it was said: ''It
is therefore unreasonable that persons who organize
corporations for the purpose of selling life insurance
would exact a warranty of an applicant for insurance
of the truth of a matter which, from the very nature
of the inquiry, might be wholly unknown to the appli-
cant, and still more unreasonable that any sane per-
son would knowingly warrant that he had never had,
in any form or any degree, any disease embraced with-
in the long ·catalogue embodied in this application.''
    If it be held unreasonable to construe as warranties
answers to such questions in regard to what diseases
the insured himself might have had, it would be much
more unreasonable to construe as warranties such
answers when given to questions in regard to what
diseases the applicant's grandparents, uncles, aunts,
etc., might have had.   In the *Link* case, *supra,* it was
also held that when it is contended that warranties

have been inserted in an insurance contract, the effect of which will inevitably be to defeat it in the end, such intention must be so clearly and irrevocably expressed as to leave the court with no other alternative but to so construe the contract. If there is another reasonable construction that may be placed upon it and thus avoid the consequences of a warranty, courts are inclined to adopt the latter construction.

The certificate states that the rights of the insured shall be "limited by the *representations* and warranties in the application for membership heretofore made by said member." The application states: "I hereby declare, warrant, and agree  *  *  * that no facts *known* to me affecting my life or disability risk are withheld, distorted, or misstated." The certificate admits there may be representations in the application. Such representations could only apply to the answers to the questions. The statement in the application infers that the answers therein were given only in so far as the facts were known by the applicant. The trial court was right in holding that, under a reasonable construction of this contract, the answers complained of were representations and not warranties, and as the pleas did not aver that the applicant knew the answers to be untrue at the time they were made, they were bad. The court did not err in sustaining the demurrer, therefore the judgment is affirmed.

*Affirmed.*