[L. A. No. 17756. In Bank.—April 24, 1941.]

ADALYN B. BITTINGER, Appellant, v. NEW YORK LIFE INSURANCE COMPANY (a Corporation), Respondent.

Joe Crider, Jr., and Clarence B. Runkle for Appellant.

Meserve, Mumper & Hughes and E. Avery Crary for Respondent.

CURTIS, J.—This is an appeal from a judgment in favor of defendant insurance company in an action by plaintiff, as beneficiary under a life insurance policy, to recover the death benefit provided therein.

On April 1, 1905, a $20,000 life insurance policy was issued by respondent company on the life of appellant's husband.

There was a provision for cash loans on the sole security of the policy and a further provision that if any indebtedness remained unpaid at the death of the insured, then the full sum of $20,000 would not be paid in installments as provided, but one sum of $13,000 would be paid, less any indebtedness due on the policy. The premiums were paid regularly until April 1, 1933. On that date there was a loan outstanding against the policy of $6,630, which was the full amount of the cash loan or reserve value at that time. There was also declared due on that date a cash dividend on the policy of $189.77. There was due from the insured on said date a semi-annual premium of $202.15 and interest on the loan in the sum of $331.50, which was payable in advance for the next ensuing year. The insured elected to use the dividend as part payment of the premium and gave his check for the difference of $12.38. The check was accepted and on May 1, 1933, the company issued its premium receipt showing full payment of the premium. The insured also sent a check for $331.50 to the company as interest payment, but it was dishonored and has since remained unpaid. Thereafter, the company wrote requesting payment of the interest due. On August 8, 1933, the company sent the insured a check for $12.38, as a refund of the portion of the premium paid in excess of the dividend, and advised him that the policy was lapsed. This check was never cashed.

The insured died on October 21, 1933, and the company refused payment to the beneficiary on the ground that the policy was not in force on that date.

It is claimed by respondent company that the policy lapsed on April 1, 1933, because of non-payment of the interest on the loan; that thereafter under the provisions of the policy it became term insurance for the amount purchased by the $189.77 dividend; and that this term insurance expired October 7, 1933. The trial court so found.

Appellant contends that the policy continued in full force and effect to October 1, 1933, by virtue of the payment of the premium and that after the acceptance of the premium and issuance of a receipt therefor, the company could not later rescind such acceptance by refunding the $12.38 and applying the dividend amount on term insurance. Appellant further contends that although no premium payments

were made on or after October 1, 1933, the policy was still in effect on October 21st, either because of the application of extended term insurance or because of a month grace period.

█ The first question to be decided is whether the policy was in full force and effect up to October 1, 1933, because of the acceptance of the premium payment even though the interest payment due on April 1st was not paid.

The policy provides that ''If any premium or interest is not paid on or before the date when due, and if there is an indebtedness to the Company, . . . '' then the policy would continue as term insurance in a manner to be detailed later in this opinion. From this provision respondent company argues that because the interest due April 1st was not paid, the policy automatically lapsed and the term insurance began to run, even though the premium due had been paid. This is a strict interpretation of the provision which results in a forfeiture even though there is no express provision for forfeiture anywhere in the policy. But assuming that respondent company is correct in its contention that the policy provided that it would immediately lapse on non-payment of interest, such provision was waived by the acceptance of the premium payment. The company could not at the same time accept the premium payment and declare the policy lapsed, nor could it lapse automatically at that time. (*Naify* v. *Pacific Ind. Co.*, 11 Cal. (2d) 5 [76 Pac. (2d) 663, 115 A. L. R. 476].) There is no question that such acceptance was made because receipts were issued therefor and the letter of May 8, 1933, from the company advising the insured that the interest was due, acknowledged the payment of the premium. Under these circumstances it is idle to argue that the policy was not in effect to October 1, 1933. █ It is true that there was an attempted rescission by the offer to refund $12.38 and application of the dividend sum of $189.77 to the payment of term insurance. Such attempted unilateral rescission was wholly ineffective. There was no acceptance of the refund by the insured because the check for $12.38 was never cashed. Furthermore, this sum was only a minor part of the premium paid. The respondent company argues that the remainder of the premium money was refunded by applying it to term insurance and that the insured waived any right to a further cash refund by failing to object to the tender as made. There is no merit to such contention.

After accepting the money for one purpose, the insurer could not then, without the consent or even knowledge of the insured, apply the money in another way which would result in converting the original policy to term insurance. (*Naify v. Pacific Ind. Co., supra.*) Section 349 of the Restatement of the Law of Contracts quoted by respondent company is of no aid to it. The money here was not "credited" to the insured in such a way that at any time he could have actually obtained the cash. This was merely a purchase by the company of something else. By the same reasoning, a creditor could waive his right to the payment of a debt if he failed to make any objection when his debtor said he was buying him a race horse or a yacht instead of making payment. A further reason why the purported rescission of the premium payment was ineffective is that it was actually attempted after the insured's death. It was only in January, 1934, that the insurance company, in a letter to appellant's attorney, declared that it had applied the dividend money to term insurance. The letter of August 8, 1933, refers only to the $12.38.

■ It being established therefore that the original policy was in effect to October 1, 1933, the question remains as to whether it was in effect on October 21st, the date of insured's death, because of either automatic term insurance or a grace period.

The table of cash loans as prepared by the actuarial department of the insurance company shows that on April 1, 1933, or after the expiration of twenty-seven years, the cash loan or reserve value of the policy was $6,630. The policy provides that " . . . If any premium or interest is not paid on or before the date when due, and if there is an indebtedness to the Company,—

"Insurance for the net amount that would have been payable in one sum as a death-claim on said due date, namely; $13,000, less the amount of the indebtedness, will automatically continue from said due date as Term Insurance for such time as any excess of three-fourths of the reserve under this policy over such indebtedness will purchase at the age of the insured on said due date, according to the Company's present published table of Single Premiums for Term Insurance, and no longer."

In figuring term insurance from April 1, 1933, the respondent company used not three-fourths, but the full reserve value of $6,630. On that date, as previously stated, there was an outstanding loan of $6,630; therefore, according to the company's theory, the only surplus reserve on which term insurance could be figured was the $189.77 dividend which had originally been used as premium payment. By using this sum the insurance company extended the term insurance to October 7, 1933.

We have already determined, however, that the original policy was effective to October 1, 1933, by the acceptance of the premium due April 1, 1933. Appellant argues that if the policy was effective to that date, then the automatic term insurance carried it far beyond October 21, 1933, the date of death of the insured. This conclusion is reached in the following manner. The same table above referred to shows that the cash loan or reserve value at the end of the twenty-eighth year, which would have been April 1, 1934, was $6,880, or $250 more than the reserve on April 1, 1933. On October 1, 1933, the end of the first half of this annual period, one-half of this added reserve or $125 had accrued. This $125 then was available as surplus reserve which would carry the term insurance beyond October 21, 1933.

The weakness of the above theory is properly pointed out by the respondent company. It is true that the reserve value had increased $125 by October 1, 1933, but the indebtedness had increased in greater proportion. Interest of $331.50 declared due on April 1, 1933, was for the next ensuing year. On October 1, 1933, one-half of that sum or $165.75 had become a part of the indebtedness due from the insured to the company. Therefore, on October 1st, we find an indebtedness of $6,795.75, which *exceeds* the reserve value of $6,755 as of the same date by $40.75. The result is that on that date there was no surplus reserve on which to base any extended term insurance. To reach any other conclusion is a mathematical impossibility.

 The remaining ground on which appellant bases her contention that the policy was still effective on October 21, 1933, is that there was a grace period provided for in the policy which would carry it beyond that date. The appellant argues that the ''Reinstatement'' provision of the policy is a grace period provision and, as such, kept the policy in effect

for the full month of October. That provision reads in part as follows: "If any premium or interest is not paid on the date when due, the Company will restore this policy as of the date of such nonpayment, on payment by the insured of such premium or interest within one month thereafter, with interest. . . . "

Considering the above-quoted provision, standing alone, it cannot be denied that by the use of the word "restore" its apparent meaning is that the policy will lapse immediately upon non-payment of premium or interest and that it will remain ineffective unless such payments are made within one month by the insured. However, before so interpreting this provision, it is necessary to look at the policy as a whole and to be governed by the general rules regarding the interpretation of insurance policies.

It should first be reiterated that nowhere in the policy is there any *express* provision made for forfeiture for non-payment of premiums or interest on the due date. This fact alone should be sufficient to deter this court from interpreting the provision in such a way as to result in an immediate forfeiture. ▆▆ That a forfeiture will not be declared unless expressly provided for in an insurance policy is well established. The necessity for such rule and the numerous authorities supporting it are best reviewed in a detailed discussion in the case of *Haas* v. *Mutual Life Ins. Co.*, 84 Neb. 682 [121 N. W. 996, 19 Ann. Cas. 58, 26 L. R. A. (N. S.) 747].

▆▆ There is, however, a further reason why the provision in question should not be interpreted in such a way as to result in an immediate forfeiture. The "Reinstatement" clause above quoted falls under that portion of the policy entitled "This Policy is Automatically Non-Forfeitable". If the respondent company's interpretation is accepted, the result will be an automatic forfeiture directly contrary to the title under which the provision falls. There are therefore two conflicting provisions in the same policy. There is no question that by express provision and in the absence of statutory regulation to the contrary, a life insurance policy may be made immediately forfeitable upon the non-payment of premium or interest due. (*Haas* v. *Mutual Life Ins. Co.*, *supra.*) ▆▆ However, it is well established that forfeitures generally are not favored. (*Ballard* v. *MacCallum*, 15 Cal.

(2d) 439 [101 Pac. (2d) 692]; *Ebbert* v. *Mercantile Trust Co.*, 213 Cal. 496 [2 Pac. (2d) 776].) This is particularly true of insurance contracts, and a forfeiture will be permitted only when expressed in the policy in clear and unmistakable terms. As stated in the case of *Bolton* v. *Standard Life Ins. Co.*, 219 Ill. App. 177, 182, "A policy of life insurance cannot legally be forfeited merely for nonpayment of the premium when it is due where no express provision is made therefor in the policy. 25 Cyc. 828; *Keeton* v. *National Union*, (Mo.) 182 S. W. 798; *McMaster* v. *New York Life Ins. Co.*, 90 Fed. 40; *Ohio Farmers' Ins. Co.* v. *Stowman*, 16 Ind. App. 205 [44 N. E. 558, 940]; *Taylor* v. *Provident Savings Life Assur. Soc.*, 134 Fed. 932; *Haverstick* v. *Penn Tp. Mut. Fire Assn.*, 156 Pa. St. 333 [27 Atl. 245]. It is a well-recognized principle of law that forfeitures are not favored and will not be upheld in contracts for insurance if by a reasonable construction it can be avoided; and that when the words of a contract are susceptible of two interpretations, that interpretation which will sustain the claim must be given preference. *Globe Acc. Ins. Co.* v. *Gerisch*, 163 Ill. 625 [45 N. E. 563, 54 Am. St. Rep. 486]; *United States Life Ins. Co.* v. *Ross*, 159 Ill. 476 [42 N. E. 859]; *Healey* v. *Mutual Acc. Assn.*, 133 Ill. 556 [25 N. E. 52, 23 Am. St. Rep. 637, 9 L. R. A. 371]; *Bailey* v. *Fraternal Reserve Life Assn.*, 202 Ill. App. 430; *Northwestern Life Assurance Co.* v. *Schulz*, 94 Ill. App. 156. It is only when it is required by the strict letter of a contract of insurance that a forfeiture will be enforced. And where there is a clause providing for a forfeiture, it will not receive any aid by judicial construction. *Ingersoll* v. *Mutual Life Ins. Co.*, 156 Ill. App. 568; *Benes* v. *Bankers' Life Ins. Co. of Nebraska*, 204 Ill. App. 425, 427; 25 Cyc. 821.'' The language in the case of *Woodmen of the World* v. *Gilliland*, 11 Okl. 384 [67 Pac. 485], is equally emphatic in regard to non-forfeiture. It is there stated at page 491: "We believe that the true rule of construction in cases like this is that the court will give to the language such a liberal construction as will tend rather to sustain than to defeat the certificate, consistent with the laws and rules of the order; that beneficiary certificates of insurance, having been designed for the relief of those who are needy and helpless, should not be defeated of their purpose on grounds and for reasons

which are purely technical; that a forfeiture will not be enforced unless it is clearly demanded by the rules governing the construction of written agreements. When a policy of insurance contains inconsistent or contradictory provisions, it is the rule that the provisions most favorable to the insured will be adopted. (Citing authorities.) Courts will construe a contract of insurance liberally, so as to give it effect, rather than to avoid it. Conditions which create forfeitures will be construed most strongly against the insurer. Only a stern legal necessity will induce such a construction as will nullify the policy.'' (See, also, *Bachman* v. *Independence Indem. Co.*, 214 Cal. 529 [6 Pac. (2d) 943], and *Kautz* v. *Zurich Gen. Acc. etc. Co.*, 212 Cal. 576 [300 Pac. 34].)

 To hold that an automatic forfeiture resulted from the non-payment of premium and interest due on October 1, 1933, it would be necessary to imply a forfeiture provision from the use of the word ''restore'' in the ''Reinstatement'' clause. Such implication would result in an interpretation in favor of a forfeiture even though the clause is made a part of that portion of the policy entitled ''This Policy is Automatically Non-Forfeitable''. In view of the authorities above cited and quoted, we do not feel authorized to so interpret the reinstatement clause.

Having concluded that the clause under consideration cannot be interpreted to provide for an immediate forfeiture, it is still necessary to determine what, if any, meaning may be given to it. It is true that this provision differs from the modern grace period provision in that the modern policy usually contains an express provision to the effect that the policy will remain in force during the period after default. However, the provision here provides a method for the curing of a default at any time within one month after such default. It being determined that the clause does not provide for an automatic forfeiture there remains only one possible purpose which it can serve, and that is to prevent a lapse of the policy immediately and extend its effectiveness for the period of one month. (*State Mut. Life Ins. Co.* v. *Forrest,* 19 Ga. App. 296 [91 S. E. 428].) The insured having died within one month after the default the appellant beneficiary is entitled to recover the death benefit. (*Cilek* v. *New York Life Ins. Co.*, 97 Neb. 56 [149 N. W. 49, 1071];

3 Couch, Cyc. of Ins. Law, sec. 633b, note 5 and cases there cited.)

The appellant is entitled to the sum of $13,000, the commuted face amount of the policy, less all indebtedness due the respondent company at the time of the death of the insured.

The judgment is reversed and the superior court is directed to enter judgment accordingly.

Carter, J., Traynor, J., and Houser, J., concurred.

Respondent's petition for a rehearing was denied May 22, 1941. Shenk, J., and Edmonds, J., did not participate herein.