IDA L. HAAS, APPELLANT, v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, APPELLEE.

FILED JUNE 11, 1909.    No. 15,610.

1. "Forfeitures are looked upon by the courts with ill-favor, and will be enforced only when the strict letter of the contract requires it; and this rule applies with full force to policies of insurance." *Connecticut Fire Ins. Co. v. Jeary*, 60 Neb. 338.

2. Contracts: FORFEITURE: CONSTRUCTION. "A clause stipulating for the forfeiture of a contract should not be aided or given effect by construction in a case where the plain meaning of the language used does not require it." *Jensen v. Palatine Ins. Co.*, 81 Neb. 523.

3. Insurance Contract: FORFEITURE. It has become a settled

rule in the construction of contracts of insurance that policies of insurance will be liberally construed to uphold the contract, and conditions contained in them which create forfeitures will be construed most strongly against the insurer, and will never be extended beyond the strict words of the policy.

4. **Insurance Policy:** CONSTRUCTION. A policy of life insurance is not a contract of assurance for a single year, with a privilege of renewal from year to year by paying the annual premiums. It is an entire contract of insurance for life, subject, when so stipulated, to discontinuance and forfeiture for nonpayment of any instalments of premium. Such instalments of premium are not intended as the consideration for the respective years in which they are paid, but each instalment is in fact part consideration of the entire insurance for life.

5. ———: ———. 'A life insurance policy, when once it takes effect by payment of the first year's premium and delivery of the policy, does not terminate at the end of the year, but it is a contract for the life of the assured. If the policy contains no provision for a forfeiture thereof by reason of a failure of the assured to pay subsequent premiums annually, a failure to pay such premiums on the day named will not constitute a forfeiture of such policy. All that the company can demand in such case is the right to set off against the amount of indemnity it has bound itself to pay the amount of the premiums remaining unpaid, with interest thereon.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Reversed.*

*Joel W. West* and *Charles S. Elgutter*, for appellant.

*James McKeen* and *Montgomery & Hall*, contra.

FAWCETT, J.

Plaintiff declared on two policies of life insurance for $5,500 each, issued by defendant to her husband, Andrew Haas, the first on July 9, 1896, and the second on November 28, 1896, each of said policies being issued upon what was known as the twenty-year distribution life plan. The deceased paid four full years' premiums upon the first of said policies and three full years' premiums upon the second. The annual premium was $190.85 on each of said policies. The four annual payments upon the first policy

continued it, according to its terms, until July 9, 1900, and the three payments upon the second continued that policy, according to its terms, until November 28, 1899. The assured died May 1, 1902. Plaintiff further alleges "that after payment of said four premiums, and on the 18th day of July, 1900, the time for payment of the fifth annual premium under the terms of said policy, there was accrued and on deposit to the credit of said insured, Andrew Haas, in the possession and under the control of said defendant company, the sum of $434.50, the property of said Andrew Haas; said sum being the accumulated surplus of the annual premiums paid by said Haas during said four years under the terms of the policy. No part of said sum has been returned or tendered by said company to said insured at any time during his lifetime or to this plaintiff after his death, and said sum has remained in the possession and under the control of said insurance company available as a premium to extend said policy in the sum of $5,500, as aforesaid, as extended insurance for more than four years after the 18th day of July, 1900, according to the tables and computations in use by said company at said time for said purpose"; and under a like allegation alleges that the defendant company had the sum of $280.50 under the second policy available as a premium to extend said policy for three years and ten months after the time for which the three annual payments had paid the premium. Plaintiff further alleges as to each of said policies that "on the 7th day of May, 1902, the plaintiff notified said defendant of the death of the said Andrew Haas and demanded payment of the amount due on said policy, and defendant, waiving proof of such death, refused to pay said policy upon the sole and only ground that the said policy had become forfeited and lapsed for the nonpayment of premiums." Plaintiff further alleges that said contracts of insurance contained no provision authorizing a forfeiture thereof for nonpayment of premium; that the failure to pay the premiums when due was a delay of

performance of such payment, and that defendant by reason thereof has a lien on the amount of the insurance due plaintiff under said policies to the extent of said unpaid premiums and interest; and that on September 24, 1906, she tendered to defendant all premiums subsequent to those which had been paid by the assured up to the time of his decease, together with legal interest thereon, "which tender, although being refused by the defendant, the plaintiff has at all times and ever since kept good, and has been and is now ready, willing and able to pay, and all the conditions of said policy to be performed and fulfilled on the part of the said Andrew Haas or by this plaintiff have been duly performed and complied with." Both policies of insurance are set out *in hæc verba* in the petition. To this petition defendant filed a general demurrer, which the district court sustained, and, plaintiff electing to stand upon her petition, judgment was entered dismissing the same and for costs, from which judgment this appeal is prosecuted.

Plaintiff's claim for a reversal of the judgment and recovery upon the policies is based upon two grounds: "(1) There is no express provision in the policies which provides for a forfeiture because of the failure to pay the annual premium on the date fixed for the payment thereof, nor any provision of like import or from which even an inference might be drawn that a failure to pay the premium *ad diem* would render the policies void or work a forfeiture thereof. (2) That nonpayment of premiums, in view of the incontestability clause in the policies, is not a valid ground of defense by the company, because nonpayment of premium is not named as an exception in the general provision of 'incontestability.'"

Defendant contends: "First. That, upon failure of Andrew Haas to pay the premiums when they became due, the policies in controversy terminated and ceased to be contracts for life insurance, though they remained in force for the period of six months from default, as contracts for the issuance of other policies for life, term or

endowment insurance, at the election of the insured, if requested by him, and as provided in the policies. Upon his failure to exercise his option in this respect, the policies became absolutely void. Second. Regardless of other considerations, upon the death of Andrew Haas while in default of payment of premiums and not having exercised his options for other contracts, the policies, by their express terms, were without force in favor of the plaintiff, because the contract in each policy was to pay 'upon the following condition, and subject to the provisions, requirements and benefits stated on the back of this policy, which are hereby referred to and made a part hereof.' 'The following condition,' as stated in the policies, is that 'the annual premium shall be paid in advance on delivery of this policy and thereafter to the company, at its home office in the city of New York, on the eighteenth day of July in every year during the continuance of this contract.' Third. In view of the facts and circumstances disclosed by, and properly inferable from, the petition, it appears that Andrew Haas, the insured, declined to continue the policies of insurance, and abandoned the contracts evidenced thereby, hence no recovery can be had thereon by the appellant."

The result of our consideration of plaintiff's first contention above set out renders it unnecessary to consider her second contention, viz., the incontestability clause of the policy. Defendant seeks to avoid the consequences of the absence from their policies of any forfeiture clause, on the ground that "an express provision that such a policy of life insurance shall cease, terminate, become void, or be forfeited (the preferred term of counsel for appellee) is not necessary. Considering all of the provisions of an insurance contract, both singly and in relation to each other, whether definitely expressed or properly to be inferred, and having in view the particular character of a life insurance policy as exceptional, especially touching prompt payment of premiums and the necessity of certainty on the part of an insurance com-

pany as to the status of its contract obligations, it is sufficient if it appears from the whole contract that it was intended and understood by the parties that non-payment of premium would terminate the policy, except as to the provisions therein for other insurance contracts if duly applied for." In order to sustain this contention of defendant, we would be compelled to hold that a forfeiture of an insurance contract may be created by construction, and need not be provided for by the strict terms of the contract. Such is not the law.

In *Perry v. Bankers Life Ins. Co.,* 47 App. Div. (N. Y.) 567, the court say: "It is alleged that a premium which was due on the 21st of March, 1898, was not paid; and for that reason it is said that the policy had become forfeited. The rule is well settled that no strained or forced construction of a contract will be resorted to for the purpose of establishing a forfeiture, but that, to warrant a party in insisting that his adversary has forfeited any rights which he would be entitled to by a contract between them, he must put his finger upon the specific provision of the contract which requires the party against whom the forfeiture is alleged to do the thing the failure to do which is relied upon to work a forfeiture." In *Carson v. Jersey City Ins. Co.,* 14 Vroom (N. J.), 300, 39 Am. Rep. 584, it is said: "A warranty in a policy of insurance excludes all argument in regard to its reasonableness or the probable intent of the parties. If the policy contains a condition which in law amounts to a warranty on the part of the assured, he can derive no benefit from the policy unless the condition has been literally performed. And it is immaterial to what cause noncompliance is attributable; for, if it be not in fact complied with, the assured will forfeit all his rights under the policy unless the forfeiture has been waived by the insurer (citing cases). Hence it has become a settled rule in the construction of contracts of insurance that policies of insurance will be liberally construed to uphold the contract, and conditions contained in them which create

forfeitures will be construed most strongly against the insurer, and will never be extended beyond the strict words of the policy." In *Burleigh v. Gebhard Fire Ins. Co.*, 90 N. Y. 220, it is said: "Each policy, after a description of the property, contained this statement: 'All contained in their frame storehouse with slate roof, situate, detached at least 100 feet on the east side of Lake Champlain.'" It appeared that there was at the time the policies were issued a small building about 75 feet distant from the storehouse occupied sometimes as an office, and so called. It was not usually used for storage purposes, but at the time of the fire it contained 83 kegs of powder which had been temporarily stored therein. The company contended that this building being less than 100 feet distant from the building containing the insured property rendered the policy void. Considering that question, the court, on page 225, say: "But the further contention that the language must be held to mean detached 100 feet from any other building of such character as to constitute an exposure and increase the risk seems to us a sensible and just construction. The brevity of the language requires that something be added to complete and elucidate the meaning. The phrase may mean detached 100 feet from any other building whatever its size or character. This would be a rigorous and severe interpretation most favorable to the insurer and operating harshly upon the insured. So construed, it would make anything which could be deemed a building, however small or insignificant, as an ice house, or privy, or open shed, within the prescribed distance, operate as a breach of the warranty. If a construction so literal or severe is intended by the insurer, he should at least say so by apt and appropriate language, and not ask the courts to supply it by intendment." In *State Ins. Co. v. Maackens*, 38 N. J. Law, 564, the seventh paragraph of the syllabus reads: "The conditions in a policy of insurance with respect to the remedy of the insured on the policy derive their efficacy entirely from the contract.

They create restrictions on his right to redress for the
benefit of the insurer, which do not exist by the general
law, and are to be construed strictly." In the opinion
(p. 572) it is said: "To give effect to such a stipulation
in cases not within its terms would be to aid in a forfeit-
ure, which the law never permits, except in cases where
the forfeiture arises under the exact words of the instru-
ment." In *Franklin Life Ins. Co. v. Wallace*, 93 Ind. 7,
the first paragraph of the syllabus reads: "Forfeitures
are not favored, and, where the language of the policy is
doubtful, courts will adopt that construction which will
avert a forfeiture." In *Northwestern Mutual Life Ins.
Co. v. Hazelett*, 105 Ind. 212, the court say: "Courts will
construe a contract of insurance liberally, so as to give it
effect, rather than to make it void. Conditions which
create forfeitures will be construed most strongly against
the insurer. Only a stern legal necessity will induce such
a construction as will nullify the policy." In 2 Bacon,
Benefit Societies and Life Insurance (3d ed.), sec. 352,
it is said: "The parties to a contract of insurance are
free to insert in it whatever conditions they please, pro-
vided there be nothing in them contrary to the common
or statute law or public policy, and consequently they
may agree that the policy shall be forfeited for nonpay-
ment of premium at the appointed day. But, in the
absence of any stipulation so providing, the nonpayment
of a premium will not effect a forfeiture." In 2 May,
Insurance (4th ed.), sec. 343, we read: "If, however, the
policy contains no such proviso (that is a proviso for
forfeiture), though the charter and by-laws require the
payment of annual premiums, the nonpayment of the
annual premium when due does not work a forfeiture.
Such a policy insures for the number of years stipulated
absolutely, leaving the annual payment of the premium
to be enforced, not as a condition, but as a part of the
consideration agreed to be paid." In *Nederland Life Ins.
Co. v. Meinert*, 127 Fed. 651, the circuit court of appeals

47

for the Seventh circuit, in considering a policy issued by a New York company to a resident of Indiana, where the defense was nonpayment of premium, and the reply was that the contract was to be construed as a New York contract and that the company had not given notice of forfeiture required by the statutes of New York, held in favor of the plaintiff on that point. In discussing the law of forfeiture they say: "It (the policy) has not been forfeited unless it is by virtue of the express provision in the policy providing for forfeiture. Without a clause providing for a forfeiture, the policy is not forfeited for nonpayment of the premium, any more than a land contract is forfeited by nonpayment of principal or interest when due. The rule is laid down in 19 Am. & Eng. Ency. Law (2d ed.), 44, as follows: 'Since forfeitures are odious in the eyes of the law, a default in the payment of a premium on life insurance does not forfeit the policy where there is no stipulation to that effect in the policy.' This is the well-settled rule. The reason why forfeitures are odious in the eyes of the law, and are said to be abhorred, is that they are not equitable. Nevertheless, if a policy of insurance provides in express terms for a forfeiture for nonpayment of the premium when due, the law will enforce it. But, before the court will declare a forfeiture, the conditions of the policy upon which the forfeiture is founded must be strictly complied with. And this brings us to the only remaining question in the case: Whether the provisions of the policy in regard to notice of forfeiture have been complied with by the company. This provision is inserted for the benefit of the company. It is the company's language, and it cannot complain if the court, as it will, place a strict construction upon it to save a forfeiture if possible." While it is true that this case was reversed by the supreme court, the reversal was upon the ground that the company had duly forfeited the policy by a proper notice in compliance with the laws of the state of New York, but the holding of the circuit court of appeals on the ques-

tion of forfeiture without a forfeiture clause is not disturbed.

Cases exactly in point are very few in number. In *Swander v. Northern Central Life Ins. Co.*, 15 Ohio C. Dec. 3, in considering a case of this kind (p. 11), it is said: "This is the only case we have found where there was no clause of forfeiture in the policy." Again (p. 12), he says: "There are very few cases upon such policies because it is very unusual that a forfeiture clause is omitted, and the question seems to have seldom arisen." In the opinion (pp. 10, 11), it is said: "In a North Carolina case (*Woodfin v. Ashville Mutual Ins. Co.*, 6 Jones' Law [N. Car.], 558) it was held that where there was no clause of forfeiture the policy could not be forfeited for nonpayment, but that it was an absolute contract and the company could not claim a forfeiture, but could only look to the personal responsibility of the party liable for the premium. This is the only case we have found where there was no clause of forfeiture in the policy. It was decided a great many years ago, by Chief Justice Pearson, when Judge Ruffin was upon the bench of that state and was one of the court." Quoting further from the North Carolina case, the court say: "In the opinion Chief Justice Pearson says: 'Upon the point that the policy was forfeited by reason of a failure on the part of the plaintiff to pay the annual instalment, this court is of opinion with the plaintiff, irrespective of the question of notice. The policy contains no condition by which it is to be void if such payment is not made, but insures the life of the slave for five years absolutely in this respect, leaving the annual payment of $12.24 to be enforced, not as a condition, but as a part of the consideration.'" Then, discussing the case which the court itself was considering, it is said: "Nor does this policy that is before us contain any condition that, if the payment of premum is not made when due, the policy is to become void and cease and determine. There are some expressions in this policy which, it has been urged, indicate that nonpay-

ment of dues might be regarded as a forfeiture of the policy, and that the policy might, under certain circumstances, lapse; but there is no express provision of forfeiture, and in view of the authorities holding that, where there is a provision of absolute forfeiture, it is to be construed strictly in favor of the insured, and may be waived by the insurance company by its conduct, it would seem as though a court ought not to import into an insurance policy a clause of forfeiture which does not in fact there exist." In *Sanford v. California Farmers Mutual Fire. Ins. Ass'n,* 63 Cal. 547, the syllabus reads: "A policy of insurance issued to one of its members by a mutual insurance company having authority to levy asessments upon the members for their proportion of the losses and expenses of the company is not forfeited or suspended by the failure of the insured to pay an assessment thus levied, unless such forfeiture or suspension is provided for as a part of the contract of insurance." A very interesting case on this subject is the case of *McMaster v. New York Life Ins. Co.,* 78 Fed. 33, which originated in the United States circuit court, northern district of Iowa, and twice ran its course through the circuit court of appeals and the supreme court of the United States. The policy in that case allowed 30 days' extension of time in which to pay the premium. The real controversy in the case was whether the 30 days' grace expired on January 12 or January 18. The application was dated December 12, 1893. The policies (five in number for $1,000 each) were dated December 18, 1893, but were not delivered until December 26 of that year. The policies contained a provision, inserted without the knowledge or consent of the insured, that subsequent premiums should be paid on December 12 of each year. The first year's premium was paid. The assured died on January 18, 1895. If the premium was due on December 12, then even with the 30 days' grace the assured was in default. But, if the premiums were not due until December 18, the 30 days' grace entitled the beneficiary to recover. An action at

law was commenced upon the policies.   Pending the hearing of that action, plaintiff filed his bill to reform the policies so that by their terms the premium would be due on December 18, instead of December 12, as stated in the policies.   On the hearing of that case Judge Shiras granted the prayer of the appellee, and entered a decree reforming the policies in accordance therewith.   On appeal to the circuit court of appeals that decree was reversed (*New York Life Ins. Co. v. McMaster,* 30 C. C. A. 532), the court concluding its opinion in these words: "Under the evidence presented in this record, the appellee cannot recover upon these policies, either at law or in equity; and the decree below must be reversed, and the case must be remanded to the court below, with directions to dismiss the bill."   Application was made in the supreme court for a writ of certiorari, but was denied.   Thereupon the action at law came on for trial before Judge Shiras, a jury being waived.   The judge in quite a lengthy opinion, reported in 90 Fed. 40, reviewed the case in detail, concluding (p. 57) as follows: "If free to give judgment according to my own view of the questions involved, I should find for the plaintiff; but, as already stated, the circuit court of appeals held in the equity case that there could be no recovery on the policies, at law or in equity, and I deem it my duty to follow this ruling, leaving it to the plaintiff to carry this action at law before that court for its further consideration; and therefore, while my opinion is with the plaintiff, the judgment must be for the defendant."   In considering the case Judge Shiras made a number of findings; the eighteenth finding being "that the defendant company has not paid said policies, or any part thereof, and, assuming the same to be valid, there is due thereon, November 1, 1898, the sum of $5,965, after deducting from the face of the policies the amount of the second premiums, with interest thereon to March 14, 1895."   In the course of his opinion Judge Shiras (p. 52) says: "If policies of life insurance were like fire insur-

ance contracts, where the risk assumed by the company terminates at a date fixed in the contract, there might be some force in the argument; but such is not the case, and the analogy suggested is misleading. In fire insurance contracts the risk is assumed for a fixed period, and the premiums demanded and paid only keep the contract in force for a named and known period. When that period elapses the contract is at an end, unless new life is given it by a renewal for another fixed period, and in such cases the payment of a year's premiums only entitles the insured to protection against loss for that period. In cases of life insurance under policies such as are sued on in this case, the contract of insurance, when once it takes effect by payment of the first year's premium and delivery of the policies, does not terminate at the end of the year, but it is a contract for the life of the assured. In other words, when the company in this case issued these policies under date of December 18, 1893, received payment of the first premiums thereon, and delivered the policies to McMaster, the company agreed on its part to pay the amounts called for in the policies to the estate of McMaster upon his death, whenever that event might occur. If the policies contained no provision for the forfeiture thereof, no further payment on the part of McMaster would have been needed to keep the policies in full force. All the company could demand in such case would be the right to set off against the amount of indemnity it had bound itself to pay the amount of the premiums remaining unpaid, with interest thereon." Plaintiff prosecuted error to the circuit court of appeals where the judgment was affirmed. 40' C. C. A. 119, Caldwell, Circuit Judge, dissenting, p. 134. On writ of certiorari to the United States circuit court of appeals for the Eighth circuit, the case was reviewed by the supreme court. 183 U. S. 25. After a full review of the case, the supreme court, in an opinion by Mr. Chief Justice Fuller, ordered: "The judgment of the circuit court of appeals is reversed; the judgment of the circuit court

is also reversed, and the cause is remanded to the latter court, with a direction to enter judgment for plaintiff in accordance with the eighteenth finding, with interest and costs." It is argued by counsel for defendant that the language of Judge Shiras above quoted is dictum. Even so, it was the opinion of an able judge, and is in harmony with the whole current of authority on that subject. Moreover it is worthy of note that the circuit court of appeals, which held views radically at variance from the views of Judge Shiras, in no manner condemned or criticised the language above quoted, nor does it meet with any condemnation or criticism in the supreme court.

In *New York Life Ins. Co. v. Statham,* 93 U. S. 24, it is said: "We agree with the court below that the contract is not an assurance for a single year, with a privilege of renewal from year to year by paying the annual premium, but that it is an entire contract of assurance for life, subject to discontinuance and forfeiture for nonpayment of any of the stipulated premiums. Such is the form of the contract, and such is its character. It has been contended that the payment of each premium is the consideration for insurance during the next following year, as in fire policies. But the position is untenable. It often happens that the assured pays the entire premium in advance, or in five, ten or twenty annual instalments. Such instalments are clearly not intended as the consideration for the respective years in which they are paid, for, after they are all paid, the policy stands good for the balance of the life insured without any further payment. Each instalment is, in fact, part consideration of the entire insurance for life. It is the same thing where the annual premiums are spread over the whole life. The value of assurance for one year of a man's life when he is young, strong and healthy is manifestly not the same as when he is old and decrepit. There is no proper relation between the annual premium and the risk of assurance for the year in which it is paid. This idea of assurance from year to year is the suggestion of ingenious

counsel. The annual premiums are an annuity, the present value of which is calculated to correspond with the present value of the amount assured, a reasonable percentage being added to the premiums to cover expenses and contingencies. The whole premiums are balanced against the whole insurance. But, while this is true, it must be conceded that promptness of payment is essential in the business of life insurance. All the calculations of the insurance company are based on the hypothesis of prompt payments. They not only calculate on the receipt of the premiums when due, but on compounding interest upon them. It is on this basis that they are enabled to offer assurance at the favorable rates they do. Forfeiture for nonpayment is a necessary means of protecting themselves from embarrassment. Unless it were enforceable, the business would be thrown into utter confusion. It is like the forfeiture of shares in mining enterprises, and all other hazardous undertakings. There must be power to cut off unprofitable members, or the success of the whole scheme is endangered." After some further discussion, of like character, the opinion continues: "The case, therefore, is one in which time is material, and of the essence of the contract. Nonpayment at the day involves absolute forfeiture, if such be the terms of the contract, as is the case here." This case is cited, not only in the *McMaster* case, 78 Fed. 33, and 183 U. S. 25, *supra,* but also in numerous other cases which we have examined.

This court is thoroughly committed to the rule announced in the above cases. In *Connecticut Fire Ins. Co. v. Jeary,* 60 Neb. 338, we held: "Forfeitures are looked upon by the courts with ill-favor, and will be enforced only when the strict letter of the contract requires it; and this rule applies with full force to policies of insurance." This syllabus is quoted and reaffirmed in the late case of *Hamann v. Nebraska Underwriters Ins. Co.,* 82 Neb. 429. In *Jensen v. Palatine Ins. Co.,* 81 Neb. 523, we held: "A clause stipulating for the forfeiture of a contract

should not be aided or given effect by construction in a case where the plain meaning of the language used does not require it." To the same effect are *Springfield Fire & Marine Ins. Co. v. McLimans & Coyle*, 28 Neb. 846; *Phenix Ins. Co. v. Omaha Loan & Trust Co.*, 41 Neb. 834; *Farmers & Merchants Ins. Co. v. Newman*, 58 Neb. 504; *Connecticut Fire Ins. Co., v. Waugh & Son*, 60 Neb. 353. In *Phenix Ins. Co. v. Omaha Loan & Trust Co., supra,* the policy was issued to one Nathaniel S. Crew upon his barn and other buildings situate on his farm in Buffalo county. The trust company held a mortgage upon the farm. To the policy was attached what is known as a "mortgage slip," which read as follows: "Loss, if any, payable to the Omaha Loan & Trust Company, of Omaha, Neb., mortgagee, or its assigns, as its interest may appear. It is hereby agreed that this insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy. It is further agreed that the mortgagee shall notify said company of any change of ownership or increase of hazard which shall come to the knowledge of the said mortgagee, and that every increase of hazard not permitted by this policy to the mortgagor or owner shall be paid for by the mortgagee on reasonable demand, according to the established scale of rates, for the whole term of use of such increased hazard." Subsequent to the issuance of the policy, Crew sold and conveyed the property to one Platter, and immediately notified the trust company of such sale. Thereafter, for a period of about three years, the company sent its notices of maturing interest to Platter, and received payments of the same from him. Neither Crew, Platter, nor the trust company ever notified the insurance company of the sale, so that the terms of the "mortgage slip" were clearly violated. The company defended upon that ground. We held the insurance company liable, one of the main

grounds for such holding being: "The policy does not provide when the mortgagee shall give this notice, nor is there any provision in the policy or 'mortgage slip' to the effect that in case the mortgagee comes into possession of knowledge that the hazard of the risk has been increased or that the property has been conveyed, and neglects to notify the insurance company thereof, that the policy shall therefore be void." It will be seen that in that case the trust company had clearly and unequivocally violated the terms of its agreement with the insurer, and yet, because the contract contained no clause rendering the policy void by reason thereof, the policy was sustained and the trust company permitted to recover.

Counsel for plaintiff in his brief says: "With a good deal of confidence we assert the negative proposition that no case can be found where a policy of life insurance which contains no express provision providing for a forfeiture has been held to be void or nonenforceable because of the nonpayment of a premium." The writer accepted this challenge, but after three days of industrious, independent investigation he has failed to find such a case. Counsel for defendant have also been unable to meet the challenge thus given. In answer thereto they say that counsel for plaintiff "appear to have overlooked the recent important decision of the supreme court of Illinois in *Weston v. State Mutual Life Assurance Co.*, 234 Ill. 492, 498." Let us examine that case and see if it so holds. In that case the assured, Curtis, had never paid a single dollar of premium. It seems that he was an old friend of Clardy, the general agent of the company at St. Louis. It was agreed that the agent would give Curtis credit for part of his commission on the first year's premium. Two policies were issued, of $3,500 each. Premiums were to be paid quarterly. The first quarterly payment on the two policies was $58.80. Clardy gave Curtis credit for $17.64 and sent him the policies, with a request to remit $41.16. Curtis did not send the check. The policies were sent to Curtis July 5, 1889. On July 26 Clardy wrote

Curtis, advising him that he, Clardy, had advanced the premium to the company, and asking for a, remittance by the 23d of August at the latest. On August 16 Clardy again wrote, asking Curtis to forward his check so as to reach St. Louis on the morning of the 24th. On August 23 Curtis wrote a letter to Clardy, stating that he was very much embarrassed at not being able to meet his obligation; that he was disappointed in getting certain moneys which he had expected, and inclosed Clardy a thirty-day note for the $41.16. On October 25 Clardy wrote Curtis, reminding him that his note had been over due for more than a month, stating that he had written several letters which had been unnoticed, and asking him to remit. On November 3 Curtis wrote Clardy, stating that he had had trouble and sickness, several members of his family having been ill, and wound up his letter as follows: "I am in close quarters all around, and just at present I do not know which way to turn. Will be obliged to give up insurance, for I cannot pay for same as I am now situated. When I applied all looked rosy. It is quite different now. What shall I do? Suggest something. What I owe you I will pay." On November 6 Clardy wrote him, expressing regret at his misfortunes, and stating that, while he was anxious to get his own "good money," he would like to keep the amount which had been written in force, and stating: "If you can send me $25 in cash and your note for $17, I will send you receipts keeping this insurance in force until December 30 and will wait a reasonable time for you to pay the notes. Now, let me know what you can do. You should by no means let this chance go by to keep insured. Your family needs the protection." On December 1 Clardy again wrote Curtis as follows: "You never said what you would do with my last proposition regarding your own insurance. Can't you look up that letter and give me an answer? I think you ought to accept it if it is possible for you to do so." Curtis did not reply to either of these last two letters. January 11 Clardy wrote Curtis: "Can-

not you do something for me on your note for $41.16?"
On January 13 Curtis wrote from Glenwood, Iowa, this
reply on the bottom of the Clardy letter: "The above
reached me here. I will be home on the 23d. I hope at
that time to have some money so that I can pay whole or
part." The renewal receipts were returned by Clardy to
the company the first part of January, 1900. They were
received by the company January 16, 1900, and the
policies marked on their books "Lapsed." Curtis died
January 31. From this statement of the facts it is clear
that Curtis had deliberately and unequivocally abandoned
his insurance. His notation of January 13 on the bottom
of Clardy's letter clearly had reference only to the pay-
ment of the note which he had give Clardy for the money
which the latter had advanced for him. In the syllabus
of the case there is not even a hint at a holding that the
nonpayment of premium when due constitutes a forfeit-
ure of a policy which does not contain a forfeiture
clause. Counsel evidently base their suggestion that the
case so holds upon what is stated in the opinion (pp. 498,
499), but we do not think the language will bear such a
construction. It is as follows: "The most serious con-
tention of appellant is that the trial court erred in in-
structing the jury to find a verdict for appellee; that, re-
gardless of the letters as to the payment of premium
passing between Clardy and Curtis, to render these
policies invalid or unenforceable there must have been,
during the lifetime of Curtis, an affirmative act of for-
feiture or of disavowal on the part of the company, fol-
lowed by notice to the assured. The policies in question
contain no specific provision as to their being lapsed or
forfeited for the nonpayment of premium. Appellee con-
tends that these policies lapsed on September 30, 1899, by
the nonpayment of the quarterly premiums. The testi-
mony in the record tends to show that if Curtis had paid
the quarterly premium after September 30 and before
December 30, 1899, it would have been necessary for him
to furnish, at his own expense, a health certificate before

the premium would have been received and the policies continued in force. While the evidence is not entirely clear on this last point, we think it shows conclusively that after December 30, Curtis would not only have had to furnish a certificate showing he was in good health, but that action would also have been required on the part of the company before the policies would have been considered in force, according to the rules of the company. This court has never decided the question of forfeiture raised on this record. In several cases policies have been construed which provided for forfeiture on failure to pay the premium. Appellant contends that the payment of the quarterly premium was a condition subsequent, while appellee insists it was a condition precedent. There is also a dispute between appellant and appellee as to whether this policy, under the ruling of the court, lapsed or should be held to have been forfeited. We do not think it is necessary to discuss either of these questions or distinguish as to the meaning of these words and phrases in order to reach a decision in this case. Manifestly, from the correspondence between Curtis and Clardy, especially in the light of Curtis' letter of November 3, it must be held that Curtis understood that he was giving up the insurance. He was distinctly told in Clardy's letter that the insurance could be kept in force in a certain way, and from that date until the renewal receipts were returned by Clardy to the company and these policies in question were marked on the books of the company as lapsed, Curtis never communicated with the company or its agent, or did anything to indicate that he wanted to keep the policies in force or thought they were in force." The decision of the court in that case was clearly right, but the court does not decide that nonpayment of premium at the time specified will, in the absence of an express agreement to that effect, work a forfeiture of the policy. On the contrary, it declined to decide that point and denied plaintiff a recovery on the ground that by his letter of November 3 Curtis had given up the insurance. The

rule running through all the cases is clearly expressed in *Holly v. Metropolitan Life Ins. Co.,* 105 N. Y. 437, as follows: "Punctuality in the payment of premiums in the case of a life insurance policy is of the very essence of the contract, and, when payment is not made at the time, the company has the right to forfeit if such is the contract." The converse of this is equally true, viz., the company has not the right to forfeit if such is *not* the contract.

Counsel for defendant cite *McLaughlin v. Equitable Life Assurance Society,* 38 Neb. 725, as sustaining "unequivocally a provision requiring the surrender of the policy within six months after default as a condition precedent to the right to paid-up insurance." We do not think the *McLaughlin* case in any manner aids defendant in this action. The policy in that case provided: "If premiums upon this policy, for not less than three complete years, of assurance shall have been duly received by said society, and this policy should thereafter become void in consequence of default in payment of a subsequent premium, said society will issue, in lieu of such policy, a new paid-up policy, without participation in profits, in favor of said Elma R. McLaughlin, * * * for as many fifteenth parts of the original amount hereby assured as there shall have been complete annual premiums received in cash by said society upon this policy at the date when such default shall first be made; provided, however, that this policy shall be surrendered duly receipted within six months of the date of default in payment of premium as mentioned above." The policy further provided: "And if any premium or instalment of a premium on this policy shall not be paid when due, this policy shall be void; and no credit for surplus accumulated on this policy shall be deemed applicable to the payment of any premium." It will be seen from the above that the policy itself expressly provided that a failure to pay any premium when due would render the policy void; but, in a spirit of fairness to the assured, it gave him the privilege, at any time within six months after such avoidance, of obtaining a

new and different policy "for as many fifteenth parts of the original amount hereby assured as there shall have been complete annual premiums received in cash by said society upon this policy at the date when such default shall first be made." In other words, the policy expressly provided that it should become void if the assured failed to pay any premium when due, with the single exception that at any time within six months thereafter, if the assured would surrender up his old policy, they would issue to him a new contract for a different amount and upon different terms. The clause providing for this in the policy is quite similar to the clause in the policies in the case at bar; but the difference, and the controlling difference between the policy in that case and the policies in this, is that in that policy there was an express provision for forfeiture for nonpayment of premiums when due, while in the policies now before us there is no such provision. The six months' time allowed for surrendering the old policy and obtaining the new one followed, was contingent upon and controlled by the forfeiture clause. In other words, the express terms of the contract rendered the policy void if the premiums were not paid when due, but gave the assured the right to partially escape the consequences of the forfeiture by doing a certain and definite act within a certain and fixed time.

In conclusion, counsel for defendant cite, in support of their contention that the policies in this case had been abandoned: *Mutual Life Ins. Co. v. Phinney*, 178 U. S. 327; *Mutual Life Ins. Co. v. Sears*, 178 U. S. 345; *Mutual Life Ins. Co. v. Hill*, 178 U. S. 347; *Mutual Life Ins. Co. v. Allen*, 178 U. S. 351. We do not think the doctrine of abandonment can be applied to this case. The failure to pay the premiums by the assured was of short duration, about two years. Immediately upon his death, the beneficiary asserted her claim under the policies by serving notice of such claim upon the defendant, and within the time allowed by law commenced the present action.

An examination of the first of the above cases shows

that, after payment of the first year's premium, the agent waited upon the assured, Phinney, and requested payment of the second year's premium, and was informed by Phinney that he did not intend to continue the insurance, and that Phinney gave his policy to the agent to be used by the agent as a sample policy in canvassing for other business. In the other three cases the company answered, alleging in each case a demand for the premium, a refusal to pay, and an agreement with the assured that the policies were to be considered as at an end. Demurrers were filed to each of the answers in those three cases, and sustained. Defendant electing to stand upon its answers, judgment was rendered in each case for the plaintiff. These judgments were all very properly reversed, and the actions remanded. On the second trial of the *Hill* case to the court and a jury, it was shown that, when the second annual premium became due, the agent of the company called upon Hill for payment of the same, presenting a renewal receipt duly executed by the proper officers of the company. Hill did not pay. After repeated requests for payment, the agent returned the renewal receipt to the general office of the company at San Francisco. The office returned the renewal receipt to the agent at Seattle, and it was again presented to Hill, and payment requested. Hill declined to make payment, and the renewal receipt was returned to San Francisco, and thence to the home office in New York, where the policy was noted as lapsed and terminated. In the face of these facts, the jury returned a verdict in favor of the plaintiff, which the trial court sustained by entering judgment thereon. This judgment was affirmed in the circuit court of appeals (55 C. C. A. 536), but was reversed by the supreme court (193 U. S. 551), and it was from the opinion by Mr. Justice Brewer in that case that defendant makes the lengthy quotation with which it closes its brief. We do not see how that case can be claimed as an authority in this. The facts above recited (fully set out in the opinion of the circuit court of appeals in 55 C. C. A. *supra,*

but not set out in the statement of facts by Mr. Justice Brewer) clearly show that the lengthy discussion of the learned justice relied upon by defendant is largely mere dictum, and at variance with the overwhelming weight of authority.    Nor do we think that *Lone v. Mutual Life Ins. Co.,* 33 Wash. 577, 74 Pac. 689, cited by Mr. Justice Brewer, gives any just rule for measuring the case at bar. In that case Lone had only made one semi-annual payment.   He never paid anything more for 12 years, a length of time which might justly be held as presenting an exception to the rule announced in the many cases above cited.

In none of the cases cited by defendant did the beneficiary offer to place the company *in statu quo* by tendering all unpaid premiums, with interest from the maturity of each, as was done in the present case.   Here plaintiff tendered, and still tenders, all of the unpaid premiums from their maturity, respectively, with interest at 7 per cent. per annum; thus offering to do more than place the defendant *in statu quo,* for it is a matter of common knowledge that during the short time of the assured's default defendant could not have used the premiums so advantageously.   We adhere to the rule this court has heretofore announced that "forfeitures will be enforced only when the strict letter of the contract requires it," and that "a clause stipulating for a forfeiture of a contract should not be aided or given effect by construction."   It can be permitted only when expressed in the policy in clear and unmistakable terms.

The argument made by defendant as to abandonment is not applicable, since the facts pleaded do not warrant a holding that as a matter of law the contract was abandoned.   In our opinion the petition states a cause of action, and the district court erred in sustaining defendant's demurrer.

The judgment of the district court is reversed and the cause remanded for further proceedings in harmony with this opinion.

REVERSED.