John Robert Harrell, Minor, by Zetta Moore, Guardian, Appellant, v. Bankers Mutual Life Company of Freeport, Appellee.

Opinion filed November 8, 1939.

E. HAROLD WINELAND, of Flora, for appellant.

SMITH, GEORGE & McCOLLUM, of Flora, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.
This is an appeal from a judgment of the circuit court of Clay county in favor of the defendant Bankers Mutual Life Company of Freeport, Illinois, in a suit brought upon a life insurance policy by plaintiff, John Robert Harrell, the beneficiary named therein. The

case was submitted to the trial court without a jury upon a stipulation of facts.

On March 27, 1919, defendant issued to Jerome W. Harrell its life insurance policy. The only provisions of the policy material to a determination of this case are the following:

"Bankers Mutual Life Company.

"In consideration of . . . the payment in the manner specified of the premiums herein stated, . . .

Hereby Insures

the life of the person herein designated as the Insured, for the amount named herein, payable as specified.

"Insured . . . Jerome W. Harrell . . .

"Amount of Insurance . . . Two Thousand Dollars, less any unpaid portion of the current year's premium . . .

"Premiums . . . Twenty-two and 40/100 Dollars as a first annual premium . . . and the further payment of a semi-annual renewal premium of Eleven and 42/100 Dollars due on the 27th day of March & September of each year thereafter.

"Provisions, Conditions and Benefits

. . .

"Incontestability. . . .

"This Policy shall Be Incontestable After Two Years From Its Date, Except for Fraud or Non-payment of Premiums.

"Grace in Payment. Thirty days grace will be allowed in payment of any Premium after the first year, during which time the insurance shall continue in force.

. . .

"Reinstatement. In case this Policy is forfeited for nonpayment of premium, it may be reinstated within one year thereafter by the Insured furnishing evidence of insurability satisfactory to the Company and the payment of all premiums then due."

The first and subsequent premiums were duly paid until September 27, 1936, when the insured failed to

pay the semiannual renewal premium then due, and failed to pay the same within the grace period provided by the policy. On November 2, 1936, the insured executed a blank form furnished by the company, the material provisions of which are as follows:

"Certificate of Insurability and Application for Reinstatement of Policy

"I hereby request the Bankers Mutual Life Company, Freeport, Illinois, to reinstate Policy No. 11296, . . . which has lapsed according to its terms on account of my failure to pay the premium past due, . . .

"I agree that if said payment of premium now past due is accepted, the Company waives no right to refuse nor incurs any obligation to accept any future past due premium on said Policy . . ."

Natalia Harrell, the wife of the insured, sent this instrument, so executed, to the company on November 2, 1936, together with her individual check for $11.42, in payment of the premium due September 27, 1936, which check was cashed by the company. It is not denied that by such action the policy was reinstated.

On January 12, 1937, Natalia Harrell, the wife of the insured, wrote to the company, asking to whom the policy was payable and when "the premium is due," and stating that if at any time the payment of premium was not made on the policy when due to send her a notice of the amount and she would send a check by return mail. On January 15, 1937, the president of the company wrote her that the company was not "presumed" to give out information to any one except the policy holder unless the insured requested it to be done and that if she wanted the premium notice sent to her, it would be necessary for her to secure and send to the company a written request from the policy holder and the company would then be glad to comply with the insured's wishes. Mrs. Harrell and the plaintiff then attempted to procure such request from the insured,

which request the insured refused to give. Neither plaintiff nor his mother knew the due dates of any of the premiums, including the premium due on March 27, 1937.

On March 7, 1937, the company sent the insured notice of the semiannual renewal premium due March 27, 1937, which notice stated that "payment must be made on or before date given below or within thirty-one days thereafter to continue this policy in force according to its terms." The date of payment specified in the notice was March 27, 1937. On the back of this notice, among other things, appeared the following, "To avoid lapsing through neglect, pay today." The premium due March 27, 1937, was never paid. On April 17, 1937, the company mailed to the insured a notice labeled "last notice" which notice notified the insured that the premium had not been paid and that "it is of the utmost importance that settlement should be made promptly. If you have any questions to ask, address this office." On April 28, 1937, the company mailed to the insured a notice notifying him that the policy "has ceased to be in force on account of the premium due recently not having been paid," which notice advised the insured in substance that it was to his interest to continue the policy and that he could do this by filling out the health certificate printed on the opposite side of such notice and sending it to the company with his remittance of the amount of the premium. The notice further stated that the company reserved the right to require additional evidence of insurability satisfactory to the company "before reinstating any policy." The insured duly received each of these three notices and made no reply to any of them.

The insured died on June 2, 1937, leaving Natalia E. Harrell, his widow, and the plaintiff, his son, who is a minor. The policy was found among other papers belonging to the estate of the insured. The insured and his wife at the time of his death and for 12 months

prior thereto were living separate and apart and the son did not make his home with his father during this period.

It was stipulated that at the time of the death of the insured and for six months prior thereto he was suffering from chronic alcoholism, which affected his "mental and physical condition"; that the observable effects varied "from periods of apparent normalcy to periods of acuteness demonstrated by delirium tremens"; that during said period he remained in active control and management of his affairs and was on the day of his death at his place of business and in the conduct and management thereof. No proceedings for the appointment of a conservator of the estate of the insured were ever had.

The principal question presented stands out clearly: Was the policy of insurance in full force and effect on June 2, 1937, the date of the death of the insured, notwithstanding the failure to pay the March 27, 1937, premium, followed by a notice from the company to the insured that the policy had lapsed by reason of the insured's failure to pay this premium?

We believe that after the nonpayment of the premium due March 27, 1937, the company had the right to bring its obligation under this policy to an end by taking affirmative and reasonable action to accomplish that purpose. The policy expressly provides that it shall be incontestable after two years from its date "except for fraud or non-payment of premiums," and that 30 days grace is allowed in the payment of any premium after the first year, "during which time the insurance shall continue in force." Under "reinstatement" it is provided: "In case this Policy is forfeited for non-payment of premium, it may be reinstated within one year thereafter by the Insured furnishing evidence of insurability satisfactory to the Company, and the payment of all premiums then due." A policy of insurance is a contract and as such is to be inter-

preted and construed by the same rules as other mercantile contracts. (*Aurora Fire Ins. Co. v. Eddy,* 49 Ill. 106; *Cottingham v. Nat. Mut. Church Ins. Co.,* 290 Ill. 26.) The language used in these provisions of the policy must be given some meaning and effect, and we believe that the company thereby intended to and did reserve the right to declare the policy lapsed or forfeited for the nonpayment of premiums. This is a reasonable construction, and was the construction evidently adopted by the company and the insured at the time he applied for reinstatement in November, 1936. In construing this language, this rule laid down by the court in *Crosse v. Supreme Lodge Knights & Ladies of Honor,* 254 Ill. 80, 86, is applicable: "The rule that ambiguous language is to be construed most strongly against the insurer does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists." To be sure, the policy did not specify the procedure to be taken by the company in order to declare the policy lapsed for nonpayment of the premiums, but we consider that the procedure taken by the company in giving the three notices was reasonable and sufficient to bring about a lapse of the policy.

The case of *Haas v. Mutual Life Ins. Co.,* 84 Neb. 682, 121 N. W. 996, cited by plaintiff as a leading case, is not in conflict with the principles which we have followed in the instant case. In the *Haas* case, the court was concerned solely with the question of whether nonpayment of a premium automatically worked a forfeiture of a policy and no question of the effect of a default followed by a notice of lapsing was involved.

The holding in the *Haas* case has been followed and approved in *Ingersoll v. Mutual Life Ins. Co.,* 156 Ill. App. 568, in which last case the court, at p. 573, states, "We are therefore of the opinion that in this case as in the Nebraska case, mere nonpayment of a premium

did not avoid the policy and forfeit the premiums paid; that the insurance continued in full force, subject to a lien for the unpaid premiums, *and to a right on the part of the company to terminate the contract if after due notice the insured should fail to comply with the condition that is to pay the premium.*'' (Italics ours.)

We feel that in the instant case the company, by giving notice to the insured of the lapsing of his policy, has followed the procedure suggested in the *Ingersoll* case and has properly terminated its liability. Where an insured has failed to pay the premiums provided for by his policy, it is manifestly fair to give the company the right to terminate its liability by proper notice. In the case of *Mutual Life Ins. Co. v. Hill,* 193 U. S. 551, 48 L. Ed. 788, 24 Sup. Ct. 538, the insured, after receiving notice, failed to pay a premium provided for by his policy and continued such failure for a period of four years prior to his death. The policy did not contain any express forfeitures clause. Suit was brought for the full amount of the policy plus interest. After disposing of the contention that the policy was covered by New York law which required the giving of a statutory notice of forfeiture, the court, speaking through Mr. Justice BREWER, said: ''Yet, notwithstanding his failure to perform his part of the contract— and performance by the insured underlies the obligation of the insurance company to perform on its part— this action was brought to compel the same performance by the company that would have been due if he had performed. It is simple justice between two parties to a contract containing depending stipulations that neither should be permitted to exact performance by the other without having himself first performed. It is true cases arise in which one party is enabled to take advantage of some statutory provision and exact compliance from the other without having himself first complied, and courts may not ignore the scope and

efficacy of such statutory provision, but, nevertheless, a judgment for failure to perform against one party in favor of the other, when the latter was the first delinquent, is offensive to the sense of righteousness and fair dealing. . . . Courts have always set their faces against an insurance company which, having received its premiums, has sought by technical defenses to avoid payment, and in like manner should they set their faces against an effort to exact payment from an insurance company when the premiums have deliberately been left unpaid.'' To the same effect, see *Burke v. Prudential Ins. Co. of America,* 221 Mass. 253, 108 N. E. 1069.

Plaintiff also contends that the conduct of the company in refusing to notify the plaintiff or his mother of the due dates of the premiums under this policy constitutes the basis of an estoppel which precludes the company from taking any action to forfeit its obligation under the policy, but cites no authority in support of this contention. The policy was a contract solely between the insured and the defendant company, and neither the wife of the insured nor the beneficiary had any interest under the policy during its continuance. (*Davis v. Metropolitan Life Ins. Co.,* 285 Ill. App. 398.)

We do not regard the stipulated evidence as to the insured's mental and physical condition during the 12 months period prior to his death as material to any of the issues before the court, nor are we able to find any course of dealing either between the insured and the defendant, or the defendant and the plaintiff and his mother, which would warrant us in holding that the defendant is precluded from relying upon its right to void the policy in question.

While the result of the insured's careless or wilful failure to pay the premium due on his policy, after notice and ample opportunity had been given to him by the defendant company, is unfortunate and has deprived plaintiff of the benefits of this policy, we do not

feel that this result is properly chargeable to the defendant or should be considered in reaching a decision in this case.

For the reasons indicated the judgment of the circuit court is affirmed.

*Affirmed.*