## Lulu Penn Ingersoll, Appellant, v. The Mutual Life Insurance Company of New York, Appellee.

### Gen. No. 14,979.

1. INSURANCE—*by what law governed.* A policy of life insurance applied for and delivered in Colorado is a Colorado contract and governed by its laws.

2. INSURANCE—*what essential to enforcement of forfeiture.* However essential promptness in the payment of premiums may be to a life insurance company's business, courts will not, in aid of mutual insurance companies, any more than in aid of others, sustain forfeitures, either with or without notice, unless the right thereto be perfectly clear.

3. INSURANCE—*how policies construed.* The language of an insurance policy is to be construed strictly against the insurer.

4. INSURANCE—*when non-payment of premium does not void.* A life insurance policy which provides only that "if this policy shall become void by non-payment of a premium" payments made shall be forfeited does not become void upon the non-payment of a premium at its due date, but the insurance continues in force subject to a lien for the unpaid premium and to a right on the part of the company to terminate the contract if after due notice the insured shall fail to comply with the condition of the policy, that is, to pay the premium.

5. INSURANCE—*when time not of the essence of the contract.* If an insurance company specifies a six months' period for the surrender of a policy after default in order to obtain a paid up policy for a proportionate amount, time is not of the essence of the contract.

6. INSURANCE—*what does not constitute abandonment under life insurance policy.* The mere failure to assert rights provided for in the event of non-payment of premiums does not constitute an abandonment thereof. No duty devolves upon the insured to protect such rights until some notice by the company is served upon such insured calling for action.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed and remanded. Opinion filed July 15, 1910.

**Statement by the Court.** The declaration to which a general and special demurrer was sustained is based on a policy of insurance issued by appellee on the life of appellant's husband. The policy was on the ten payment life ten year distribution plan, that is, instead of a stipulated net premium based on the expectancy of life being paid annually for life, a larger fixed premium was to be paid annually for ten years. At the end of that time if the policy was then in force and at stated periods thereafter dividends were to be paid thereon, to the insured, and at death $2500, the amount of the policy, was to be paid to appellant. Eight annual payments of $143.75 had been made. The ninth and tenth payments due May 23, 1898, and 1899, respectively, were not paid. In December, 1902, the agent of the Company wrote to the insured "suggesting that he apply for reinstatement." Plaintiff at the request of insured, thereafter left the policy sued on with defendant's agent at Chicago, "while the matter of reinstatement and the amount of dividends due on said policy be considered by the company."

Four years thereafter and without any further effort on the part of the insured or plaintiff to procure insured's reinstatement, or any further notice from the Company, the insured died, April 10, 1906. Thereupon due and timely proofs of death were tendered to the defendant, but defendant denied all liability on the ground that said policy lapsed in May, 1899.

The policy contained the following statements material to the consideration of this case:

"In consideration of the application for this policy, which is hereby made a part of this contract, The Mutual Life Insurance Company of New York promises to pay    *    *    * unto Lulu Penn Ingersoll (wife of Frank W. Ingersoll), of Durango, in the County of La Plata, State of Colorado, $2,500    *    *    * upon acceptance of satisfactory proofs at its Home Office of the death of Frank W. Ingersoll, *during the continuance of this policy,* upon the following conditions, and subject to the provisions, requirements and benefits stated on the back of this policy, which are hereby referred to and made a part thereof.

The annual premium of $143.75 shall be paid in advance on the delivery of this policy, and thereafter to the Company at its Home Office in the City of New York, on the 23rd day of May in every year during the continuance of this contract, until premiums for ten full years shall have been duly paid said Company.    *    *    *"

On the back was printed:

"Notice that each and every such payment is due at the date named in the policy is given and accepted by the delivery and acceptance of this policy, and any further notice, required by any statute, is thereby expressly waived.    *    *    *

*If this policy shall become void by nonpayment of premiums, all payments previously made shall be forfeited to the Company except as hereinafter provided.*

This policy is issued on the 10-year distribution plan. It will be credited with its distributive share of surplus apportioned at the expiration of 10 years from the date of issue. *Only 10 year distribution policies in force at the end of such term,* and entitled thereto by year of issue, shall share in such distribution of the surplus; *and no other distribution to such policies shall be made at any previous time.*    *    *    *

After three full annual premiums have been paid upon this policy the Company will *upon the legal surrender thereof before default in payment of any premium or within six months thereafter* issue a nonparticipating policy for paid-up insurance payable as herein provided.    *    *    *

No agent has power on behalf of the Company to make or

modify this or any contract of insurance, to extend the time
for paying a premium, to bind the company by making any
promise, or by receiving any representation or information
not contained in the application for this policy.''

EDMUND H. SMALLEY, for appellant.

WINSTON, PAYNE, STRAWN & SHAW, for appellee; M. H.
WHITNEY, of counsel.

MR. JUSTICE MACK. delivered the opinion of the court.

In our judgment the decisions of the United States Su-
preme Court in Ins. Co. v. Hill, 193 U. S. 551, and of our
Supreme Court in Rose v. Ins. Co., 240 Ill. 45, are conclu-
sive against appellant's contentions that certain notices re-
quired to be given a New York policy holder under New
York law are essential in this case as conditions precedent to
forfeiture because of the statement in the policy that it is
to be governed by the law of New York.

This policy was applied for and delivered in Colorado
and is a Colorado contract.

The vital questions in the case are:

1st: Did this policy become forfeited by the failure to pay
the ninth premium subject only to the right to secure a paid
up policy for eight-tenths of $2500 in the manner specified
in the policy?

2nd: If so, is the time fixed for surrender, six months, of
the essence of the contract, or is the insured entitled to a
paid up policy on application at any time or within a rea-
sonable time thereafter?

3rd: Did the assured or appellant abandon any rights he
or she may have had?

In considering these questions, the nature of such a limit-
ed payment life policy must ever be kept in view. This is
well stated by Mr. Justice Bradley in New York Life Ins.
Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789:

"We agree with the court below that the contract is not
an assurance for a single year, with a privilege of renewal

from year to year by paying the annual premium, but that it is an entire contract of assurance for life, subject to discontinuance and forfeiture for nonpayment of any of the stipulated premiums. Such is the form of the contract, and such is its character. It has been contended that the payment of each premium is the consideration for insurance during the next following year as in fire policies. But the position is untenable. It often happens that the assured pays the entire premium in advance, or in five, ten or twenty annual installments. Such installments are clearly·not intended as the consideration for the respective years in which they are paid; for, after they are all paid, the policy stands good for the balance of the life insured without any further payment. Each installment is, in fact, part consideration of the entire insurance for life. It is the same thing where the annual premiums are spread over the whole life. The value of assurance for one year of a man's life when he is young, strong and healthy is manifestly not the same as when he is old and decrepit. There is no proper relation between the annual premiums and the risk of assurance for the year in which it is paid. This idea of assurance from year to year is the suggestion of ingenious counsel. The annual premiums are an annuity, the present value of which is calculated to correspond with the present value of the amount assured; a reasonable percentage being added to the premiums to cover expenses and contingencies. The whole premiums are balanced against the whole insurance."

It is totally unlike successive term insurance in which each premium is a payment for the insurance during the term and in no part for any subsequent period, as was the case of Roberts v. Life Ins. Co., 101 Ill. App. 313.

1. In Haas v. Mutual Life Ins. Co., 84 Nebr. 682, the court considers at length the question as to whether mere nonpayment of premium in the absence of an *express* provision that the policy shall in that event be void, prevents a recovery in case of death thereafter, and concludes that it does not.

In reference to the case of Weston v. State Mutual Life Assur. Co., 234 Ill. 492, this court correctly says: "The court does not decide that non-payment of a premium at the time

specified will, in the absence of an express agreement to that effect, work a forfeiture of the policy. On the contrary it declined to decide that point."

Forfeitures are not favored. However essential promptness in the payment of premiums may be to a life insurance company's business, courts will not, in aid of mutual insurance companies, any more than in aid of others, sustain forfeitures, either with or without notice, unless the right thereto be perfectly clear.

Many companies expressly provide, and this defendant company has, in many of its policies, as shown by reported cases, expressly provided, that the policy shall be null and void and all premiums forfeited, subject only to certain rights of reinstatement, if default be made in the payment of any premium. Such is not the language used in this policy. It provides that "*if* this policy shall become void by non-payment of a premium" payments made shall be forfeited: not "*that* it shall become void in that event and thereupon the payments made shall become forfeited." To sustain defendant's contention that the failure to pay the ninth premium absolutely and automatically nullified the insurance, subject only to the right to secure a paid up policy, would compel us to hold as the Nebraska court says, "that a forfeiture of an insurance contract may be created by construction and need not be provided for by the strict terms of the contract. Such is not the law." (Haas case, *supra*).

The language of an insurance policy is to be construed strictly against the insurer. We are therefore of the opinion that in this case as in the Nebraska case mere nonpayment of a premium did not avoid the policy and forfeit the premiums paid; that the insurance continued in full force, subject to a lien for the unpaid premiums, and to a right on the part of the company to terminate the contract if after due notice the insured should fail to comply with the condition, that is, to pay the premium. In the event of such a termination, however, the right to a paid up policy as provided for would arise.

Under our interpretation of the policy, the Company, by

virtue of the clause on the back of the policy, would thus have the right to forfeit or retain the accumulated reserve, giving only a paid up policy therefor, after the original contract of insurance should have been annulled. This is no unsubstantial right, for in the absence of such a provision, the insured, after the original policy had been annulled, might well claim the reserve thereon, that is, the moneys paid by him not for the risk theretofore carried, but for the future risk which the Company, after annulling the contract, will no longer carry, moneys which, under such circumstances, it would not have earned.

That the Haas case (*supra*) was most carefully considered by the Nebraska court is clear, both from the fact that a rehearing was sought and denied and from the further fact that within two weeks thereafter the same court upheld an automatic forfeiture for non-payment of premium where the policy clearly provided therefor. McElroy v. Met. Life Ins. Co., 84 Neb. 866. As the report of the Haas case (*supra*) does not clearly show that the policy there involved was identical with the one here involved, we have examined the original briefs and the very forcible brief submitted by this defendant company on a petition for rehearing, in which the Rose case (*supra*), as well as the Weston case (*supra*), is discussed. We concur, however, in the conclusions reached by the Nebraska court.

The question before us, although it might have been raised in the Rose case (*supra*), was not there presented. The court says at page 54: "It is not contended that notice was necessary unless the statute of New York became a part of the contract," and the court, following the Hill case (*supra*), held only that the statute had not become a part of the contract.

The rule is clearly stated by Hon. Emlin McClain of the Supreme Court of Iowa in 25 Cyc. 828 in these words: "But where there is in the policy no stipulation or condition for forfeiture on account of non-payment of premium, a default in payment will not operate in itself as a forfeiture nor

can it be insisted upon by the Company as constituting a forfeiture in the absence of any notice."

In Gruwell v. Knights & Ladies of Security, 126 Mo. App. 496, 504, the court said:

"Though the law always looks with an unfriendly eye on provisions in contracts for the forfeiture of acquired rights, where the parties clearly stipulate for such forfeiture and it does not appear to be obnoxious to any sound reason of public policy, courts will enforce the contract the parties themselves have made. No reason appears for denying to the insurer the protection of a contractual provision compelling the prompt payment of the stipulated consideration on pain of forfeiture. Indeed, it is difficult to perceive how any insurance company, whether old line, mutual, or fraternal, could do business at all if it permitted its policies to remain in force indefinitely after the assured had ceased to pay agreed premiums. Forfeiture for non-payment is a necessary means to avert disaster to the enterprise and it is well settled that stipulations in the contract which provides that non-payment *ipso facto* shall work a forfeiture, without notice to the delinquent, should be enforced. But, in the absence of any stipulation in the contract for forfeiture on the ground of non-payment, the policy will remain in force during the lifetime of the assured, however delinquent he may have become with respect to agreed payments. The idea that the contract of insurance remains in force only during the period for which a premium has been paid, though it has the support of respectable authority, we think is opposed to sound reason, as well as to the weight of authority."

See too Union Central Life Insurance Co. v. Morrow, 7 Ohio Decisions, 118.

If this defendant's contentions were correct and if, as might have been the case, this were a twenty year endowment policy and the premiums for nineteen full years had been paid so that the Company would have in its reserve nearly nineteen-twentieths of the face of the policy, nevertheless the entire amount could be forfeited by it without notice, without an opportunity to make good what might have been an oversight in paying, if the oversight continued one

day over six months.   In the absence of a perfectly clear
agreement to that effect, we shall not sanction such a forfeit-
ure.

2. If the foregoing views be sound, as we think they are,
there is no necessity for considering the second question.
It has, however, been argued at length and if it should final-
ly be determined that our solution of the first question is
not correct, the second must be answered.   Lenon v. Mutual
Life Ins. Co., 80 Ark. 563, and in the notes thereto in 8
L. R. A. (N. S.) 193, the authorities are collected.   We con-
cur in the conclusions reached in that case and in the Ken-
tucky cases there cited, though contrary to the weight of
authority, that in specifying a six months period for sur-
render of the policy after default in order to secure a paid
up policy for a proportionate amount, time is not of the es-
sence of the contract.   The insurance company has received
and has in its reserve the entire consideration for such a
policy; there is nothing executory on either side.   However
essential to the proper conduct of its business it may be that
premiums be promptly paid—premiums that condition the
continuance in force of an existing contract, it cannot be con-
tended that a like necessity exists in regard to the time of
surrender.   The surrender itself is a purely formal act; if
the policy has been forfeited as an existing policy for the
full amount, the Company gains nothing by the actual sur-
render and loses no rights by the failure to surrender; if
the surrender is required primarily to secure notice to the
company that all claims against it have been abandoned, then
assuredly the time of giving such notice should not be deemed
of the essence of the contract; the company already has in
its possession, in the shape of the reserve on this very policy,
a sum of money held by it for the very purpose of meeting
this obligation—the full money consideration therefor.   To
hold that time is of the essence is to enable the company to
forfeit oft times a large amount of money carried on its
books as a liability on account of the specific policy, money
paid to it over and above the actual cost of carrying the risk
from year to year, for the very purpose of accumulating it

so as to relieve the insured from the burden of paying during his entire lifetime, the annually increasing actual cost of insurance.

While the provision contained in the policies issued by most of the leadnig companies today that after two or three years' premiums shall have been paid the right either to a paid up policy or to extended insurance should be automatic, with the privilege, moreover, to obtain the other or the cash surrender value by application within a certain time, may not of itself throw any light on the correct determination of the question before us, it does nevertheless demonstrate that today the companies themselves do not regard it as essential that a surrender be made within a fixed time or that any surrender at all be made in order to secure some rights to the insured who shall have lapsed his original policy.

3. Conceding that the insured may have believed that he lost all of his rights by his inability to meet the ninth premium, he cannot, as a matter of law, be said thereby to have abandoned whatever rights he did have. An abandonment in fact would be at the best a ground of defense, not a ground of demurrer to a declaration. There is nothing in this declaration which justifies an inference of an actual abandonment of the rights under the policy. On the contrary, the act of the agent in requesting the insured to consider reinstatement, and the delivery of the policy by the plaintiff to the company, not for purposes of surrender but for reinstatement, indicate clearly that neither party deemed the policy as abandoned at that time; the subsequent retention by the company of a policy not delivered to it for cancellation or surrender cannot be deemed an abandonment by the other parties of their rights.

We do not, however, assent to the contention that a contractual right of this kind is or can be deemed to be abandoned at law by mere failure to assert it for a period short of the statute of limitations, or in equity without laches. If, as we hold, the rights of plaintiff were not automatically forfeited, although subject to be forfeited on reasonable notice, no duty devolved on her or on the insured to protect

these rights until notice should be given. A waiver or abandonment of an existing chose in action is equivalent to a gift or release thereof to the obligor. This requires a technical release, a surrender of the document incorporating the right or an accord and satisfaction. An express verbal renunciation without consideration is not binding; much less is a mere failure to assert the right within the period of the statute of limitations to be deemed an abandonment or renunciation thereof.

If plaintiff's rights are limited to the value of the paid up policy for eight-tenths of the face value and if surrender or demand be a condition precedent thereto, it may be that such demand must, as the majority of the court in the Kentucky cases held, be made within the reasonable time of five years, unless waived, even though not within the specified time of six months. It is, however, unnecessary at this time to decide this question because, in our judgment, the transactions of December, 1902, and the subsequent retention of the policy by the company amounted to a waiver of any further demand or surrender.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*