## Mahalia Amps and Sarah J. Amps, Plaintiffs in Error, v. Public Life Insurance Company, Defendant in Error.

### Gen. No. 30,368.

1. INSURANCE—*sufficiency of evidence to sustain finding of lapse of life insurance policy by nonpayment of premium instalment.* Evidence in action on life insurance policy held to sustain finding that policy had lapsed, prior to death of insured, by nonpayment of premium instalment within grace period after due date.

2. INSURANCE—*obligation of insurer under life policy after default of premium, where no forfeiture declared before loss.* Where the covenants of a policy of life insurance condition the existence of the obligation of the insurer thereunder upon the payment in advance of quarterly instalments of premiums within a thirty-day grace period following the due date thereof, the insurer was under no obligation under such policy to the beneficiaries of the insured who died while an instalment was in default, although the policy contained no provision for a forfeiture in the event of nonpayment of premium, and although the insurer did not formally notify either the insured or the beneficiaries, prior to the death, that the policy had been forfeited.

Error by plaintiffs to the Municipal Court of Chicago; the Hon. ROBERT E. GENTZEL, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1925. Affirmed. Opinion filed February 2, 1926. Rehearing denied February 17, 1926.

SCHOENBROD & ROSENGARD, for plaintiffs in error.

A. L. WILLIAMS, for defendant in error.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In an action on an insurance policy, issued by the defendant company on August 16, 1922, on the life of Washington D. Amps for the benefit of plaintiffs as beneficiaries, wife and mother of the insured, the court, after a hearing without a jury, found the issues

in favor of the company and on July 14, 1925, entered the judgment against plaintiffs for costs which it is sought by this writ of error to reverse.

It is stated on the first page of the policy that it is a "twenty payment life" policy for $1,000, but by an attached rider the company agreed to pay double the amount in case the insured met his death through external, violent and accidental means. He was drowned in Lake Michigan on September 4, 1924. Plaintiffs sued to recover $2,000, alleging that "all the terms, covenants and conditions of   *   *   *   said contract of insurance have been duly fulfilled and complied with" by the insured during his lifetime and by plaintiffs, as beneficiaries, after his death. It was conceded on the trial that, if plaintiffs were entitled to recover anything, $2,000 was the proper amount. The company, in its affidavit of merits, denied that all the terms, covenants and conditions of the policy, or contract of insurance, had been complied with by the insured or by the beneficiaries, and alleged that the beneficiaries were not entitled to recover from it the amount of the policy, or any sum, for the reason that neither one of the two quarterly premiums, each for $10.03, due respectively on May 16, 1924, and August 16, 1924, ever was paid.

Practically the only disputed question of fact on the trial was whether the quarterly premium, due on May 16, 1924, had been paid. Mahalia Amps, wife of insured, testified in substance that she paid in cash the premium due on that date on *April 18, 1924, i. e.,* nearly a month before it became due, to Lewis W. Johnson, agent of the company, when he called at her home in Chicago; that at the time of such payment he delivered to her the company's printed receipt for the amount, countersigned by him, but that the receipt had been lost; that all prior premiums had been paid in cash, either by the insured or herself, to Johnson and similar receipts given; that a day or two *after*

the insured's death Johnson again called at her home at which time (within the 30 days' grace period) she tendered to him $10.03 in cash, in payment of the premium due on August 16, 1924, but that Johnson refused the money, saying that, inasmuch as her husband had died on September 4, 1924, the payment of such premium was unnecessary; and that subsequently Johnson informed her that the company would not pay the beneficiaries the amount of the policy because the premium due on May 16, 1924, had never been paid. She produced some receipts for payment of premiums due prior to May 16, 1924. It was conceded that Johnson was authorized to collect all premiums from the insured. The policy provided that "a grace of one month (not less than 30 days) will be allowed for the payment of every premium after the first, during which time the insurance shall continue in force"; and that "if death occurs within the month of grace, no reduction will be made from the amount payable hereunder for the unpaid premium or any installment or installments thereof necessary to complete the premium for the current policy year"; and that "this contract is based upon the receipt of premiums annually in advance, but the mode of premium payments may be changed on any anniversary date of the policy from annual to semi-annual, quarterly or monthly installments in advance, or *vice-versa.*" In the written application, signed by insured, for the policy, mention is made that the premium is to be paid "quarterly" and in the amount of "$10.03." It does not appear that the mode or time of paying the premiums was changed at any time. Johnson testified in substance that he received from Mahalia Amps the premium (due under the policy in question on February 16, 1924) on March 14, 1924, almost at the end of the 30-day period of grace, and gave her a written receipt for the payment; that the prior premiums on the policy had never been paid on their due date and only

after repeated calls and solicitations; that, about a year before, a payment was not made until on the very last day of the grace period; that he saw Mrs. Amps on April 18, 1924, at which time she paid him some money due on a policy which she was carrying for her son (not the policy in question); that she did not pay him any money at that time on the policy sued upon; that he made several unsuccessful efforts to collect the premium, due on the policy sued upon on May 16, 1924, but that the same was not paid; and that the day after the insured's death he called on Mrs. Amps at her request, when she tendered to him in cash $10.03, which he refused, telling her in substance that, if the policy was alive, such a payment would be unnecessary, but that, if the policy had lapsed, the company would not reinstate it after her husband's death.

From the foregoing testimony, and other testimony and documentary evidence introduced on the trial, the court found in effect that the premium, due on the policy on May 16, 1924, had never been paid and that in consequence the policy had lapsed. It is apparent that, if the premium due on May 16 had been paid in apt time, the policy would have been in full force and effect at the time of the insured's death (September 4, 1924), because the next premium payment, accruing on August 16, was not *required* to be paid, by virtue of the 30-day period of grace clause, until September 15, which is *after* the date the insured died.

One of the contentions of plaintiffs' counsel is that the above-mentioned finding of the court is not sustained by a preponderance of the evidence. After a careful review of the transcript we are of the opinion that the finding is sufficiently supported by the evidence and should not be disturbed.

Plaintiffs' counsel contended in the trial court that, even assuming that the payment of the quarterly premium in question had not been made, still, inas-

much as the policy does not contain any provision for
a forfeiture thereof because of a failure to pay the
premium on the due date including the 30 days' grace,
plaintiffs, as beneficiaries, are entitled to recover the
full amount of the policy. Counsel submitted a propo-
sition of law, embodying the contention, to the trial
court, but the court marked it "refused," and made
the further indorsement thereon that it is "not in
point." Counsel make substantially the same conten-
tion in this court, as a ground for a reversal of the
judgment, citing in support thereof the cases of *Inger-
soll v. Mutual Life Ins. Co.*, 156 Ill. App. 568; *Bolton
v. Standard Life Ins. Co.*, 219 Ill. App. 177; and *Haas v.
Mutual Life Ins. Co.*, 84 Neb. 682. After a review of
the provisions contained in the policy sued upon, and
the evidence, we are of the opinion that the principles
announced in those cases are not applicable to the
present case.

There is no clause in the policy providing for the
declaring by the company of a forfeiture in case of
failure of payment of the quarterly premiums as they
become due, including the 30 days' grace, and there is
no evidence that the company, after the failure of pay-
ment of the quarterly premium of May 16, 1924,
formally in writing or otherwise notified the insured
or the beneficiaries that the policy had been "for-
feited." From the terms and language of the policy
it is apparent, we think, that the keeping of it in force
was dependent upon the making of the payments of
the quarterly premiums on their due dates, allowing
for each payment the period of grace of 30 days, and
that that was the contract of the parties, clearly un-
derstood by both. On the first page it is stated that
the company "agrees to pay" to the beneficiaries,
upon receipt of due proofs of death of the insured,
the amount of the insurance *"provided* this policy is
in force at the time of the death of the insured"; and
in several other clauses it is mentioned that such pay-

ment will be made "if all premiums have been duly paid." In another clause it is stated: "This policy shall be incontestable after it shall have been in force, during the lifetime of the insured, for one year from date of issue *except for nonpayment of premium*"; in another "except as herein provided" (evidently referring to the 30 days' grace clause) "*the payment of a premium,* or any installment thereof, *shall not maintain the policy in force beyond the date when the next premium or installment thereof is due and payable*"; and in another, "should this policy *lapse* by reason of *nonpayment of any premium,* it may be *reinstated* at any time *upon evidence of insurability* of the insured at the time of application for reinstatement, satisfactory to the Company, and the payment of all arrears of premiums," etc. In the rider, headed "Double Indemnity Benefit," it is stated: "The Company will pay double the face amount of this policy upon  *  *  * due proof  *  *  * that the death of the insured occurred  *  *  * in direct consequence of bodily injury effected solely through external, violent and accidental means,  *  *  * *provided* that *no premium is due and unpaid*  *  *  * and that this policy is then in full force." And, finally, at the end of the policy, just above the signature of the officers of the company, under date of August 16, 1922, it is stated:

"This insurance is granted in consideration of the application for this policy  *  *  * and in further consideration of the payment in advance of the sum of $37.85 (which may, however, be paid in semi-annual, quarterly, or monthly installments in advance  *  *  *), *being the premium for term insurance* terminating on the 16th day of August, 1923, and of the payment *as renewal premiums* of a like sum (which may also be paid in semi-annual, quarterly or monthly installments in advance) on the 16th day of August in each and every year during the continuance of the contract, or until renewal premiums for nineteen com-

plete years shall have been paid. This policy takes effect as of the 16th day of August, 1922.''

In the case of *Roberts v. Ætna Life Ins. Co.*, 101 Ill. App. 313 (affirmed 212 Ill. 382), suit was brought on a policy of insurance, in consideration of the issuance of which the insured had given his four notes of $6.25 each for the premiums for periods aggregating one year. The first premium note was payable one month from the date of the policy, March 14, 1899, and the payment thereof was to carry the insurance for two months; the second note, payable in two months, continued the insurance for four months, and so on. The notes as well as the policy provided that in case of nonpayment of any one of the notes at maturity the insurance should cease. The first note was paid, but the second and third were not. After the maturity of the third note, June 14, the insured received accidental injuries on July 10 which caused his death on July 26. Between the time of his injuries and death, his sister went to the office of the company, and, in his behalf, offered to pay said second and third notes which were past due and tendered the money therefor. The company refused to accept the money on the ground that the insurance had lapsed. When proofs of death were presented the company wrote: ''Inasmuch as the insurance  *  *  *  expired on May 14th, by reason of the nonpayment of the second note given in connection with the issue of said policy, there could be no claim under it.''

On the trial, at the conclusion of plaintiff's evidence, the court instructed the jury to return a verdict for the company and judgment was entered accordingly. On writ of error the Appellate Court for this district affirmed the judgment and held that under the facts ''there is presented no question of forfeiture'' (p. 319) and said (p. 316):

''We are unable to see any logical ground upon which it could be held that the beneficiary named in a

life insurance policy gains thereby vested rights which cannot be defeated through a failure of the insured to comply with the terms of the contract as to payment of premiums. If the contention of counsel were tenable, there would be no reason, save sense of moral obligation, for the payment of any premiums upon insurance policies such as this after the one payment by which the issuing of the policy had been secured. This policy expressly makes the prepayment of premiums a condition precedent to the existence of the contract. It provides for separate insurance covering separate periods of time.''

We think that the decision and holdings in the *Roberts* case should be followed in the present case. While the policy in the *Roberts* case is somewhat different from the policy in the present case, yet in both policies the contract was for term insurance and the continued existence of the insurance was dependent upon the payment of the premiums at the times specified. In the present policy, as to the payment of the premiums, it was expressly provided that ''the payment of a premium, or any installment thereof, shall not maintain the policy in force beyond the date when the next premium or installment thereof is due and payable,'' considering, of course, the 30 days' period of grace. In 32 Corpus Juris, p. 1196, sec. 329, it is said: ''Where instead of payment of the entire premium at one time, provision is made in the contract of insurance or policy for payment in installments, annually, semi-annually, quarterly, monthly, or weekly, as the case may be, each installment must be paid when it falls due according to the terms of the contract in order to keep the policy in force, except where such payment may have been excused or waived by the company.'' In 37 Corpus Juris, p. 472, sec. 189, it is said: ''It has been laid down that the covenants of insurer to pay the loss and of insured to pay the premiums may be dependent, and that in such case

the obligation of the insurer ceases where premiums are not paid, notwithstanding the absence of an express provision for forfeiture." (Citing *Mutual Life Ins. Co. v. Hill,* 193 U. S. 551; *Jackson v. Mutual Life Ins. Co.,* 186 Fed. 447, 450.) In the *Hill* case it is said (p. 559): "It is simple justice between two parties to a contract containing depending stipulations that neither should be permitted to exact performance by the other without having himself first performed. * * * Courts have always set their faces against an insurance company which, having received its premiums, has sought by technical defenses to avoid payment, and in like manner should they set their faces against an effort to exact payment from an insurance company when the premiums have deliberately been left unpaid."

Our conclusion is, after considering the evidence contained in the present transcript and a considerable number of adjudicated cases, that the municipal court did not err in entering a finding and judgment in favor of the defendant company and accordingly the judgment will be affirmed.

*Affirmed.*

Barnes, P. J., and Fitch, J., concur.